# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMSC-010

Filing Date: February 16, 2010

Docket No. 31,549

CITY OF SANTA FE,

       Plaintiff-Petitioner,

v.

TRAVELERS CASUALTY & SURETY COMPANY,
a Connecticut corporation,

       Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Daniel A. Sanchez, District Court Judge**

Sheehan, Sheehan & Stelzner, P.A.
Timothy M. Sheehan
Jaime L. Dawes
Sara N. Sanchez
Albuquerque, NM

for Petitioner

Keleher & McLeod, P.A.
Thomas C. Bird
Ann M. Conway
Deron B. Knoner
Albuquerque, NM

for Respondent

Steven Kopelman
Santa Fe, NM

for Amicus Curiae
New Mexico Association of Counties

Randall D. Van Vleck
Santa Fe, NM

for Amicus Curiae
New Mexico Municipal League

Lawrence J. Horan
Albuquerque, NM

for Amicus Curiae
Mid-Region Council of Governments

**OPINION**

**CHÁVEZ, Chief Justice**.

**{1}**     The City of Santa Fe contracted with Lone Mountain Contracting, Inc., to repair a water tank. The contract did not contain a time-to-sue provision, and therefore the six-year statute of limitations applied to the contract. *See* NMSA 1978, § 37-1-3 (1880, as amended through 1975). To comply with Section 13-4-18(A)(1) of the Little Miller Act, NMSA 1978, §§ 13-4-18 to -20 (1923, as amended through 1987), Lone Mountain obtained a performance bond from Travelers Casualty and Surety Company. The bond contained a two-year time-to-sue provision. Santa Fe declared Lone Mountain in default and demanded performance by Travelers on September 29, 2004. Santa Fe ultimately sued Travelers on May 14, 2007. The district court granted summary judgment to Travelers, holding that the two-year time-to-sue provision in the bond applied and barred the lawsuit for being untimely. The Court of Appeals agreed, relying on *State ex rel. Udall v. Colonial Penn Insurance Co.*, 112 N.M. 123, 812 P.2d 777 (1991). *City of Santa Fe v. Travelers Cas. & Sur. Co.*, No. 28,944, slip op. at 3 (N.M. Ct. App. Jan. 14, 2008). We reverse and hold that unless the governmental entity directly contracts for a shorter time-to-sue provision with either the contractor or the surety, a shorter time-to-sue provision contained in a performance bond is unenforceable. To hold otherwise would be to permit the contractor and the surety to unilaterally negotiate terms that would frustrate the purpose of the Little Miller Act, which is to ensure that governmental entities are afforded the fullest protection for the completion of contracts.

**BACKGROUND**

**{2}**     Santa Fe contracted with Lone Mountain in 2003 to repair a water tank. To comply with Section 13-4-18(A)(1), Lone Mountain obtained a performance bond from Travelers. Although the contract between Santa Fe and Lone Mountain did not contain a time-to-sue provision, the bond issued by Travelers contained the following provision:

> Any proceeding, legal or equitable, under this Bond . . . shall be instituted
> within two years after Contractor Default or within two years after the

2

Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

**{3}** On September 29, 2004, Santa Fe declared Lone Mountain in default and demanded performance from Travelers. Travelers denied the claim on October 28, 2005. After negotiations failed and Travelers invoked the two-year time-to-sue provision, Santa Fe filed a complaint for declaratory judgment in district court on May 14, 2007, seeking application of the six-year statute of limitations under Section 37-1-3(A). The district court granted summary judgment to Travelers and the Court of Appeals affirmed.

**{4}** Santa Fe advances two arguments for reversing the Court of Appeals. First, if a contractor and its surety are permitted to negotiate a shorter time-to-sue provision between themselves, the public policy underlying the Little Miller Act would be frustrated. Second, reliance by the Court of Appeals on *Udall* is misplaced, because unlike the parties in *Udall*, where the governmental entity contracted directly with the surety for a shorter time-to-sue provision, Santa Fe and Travelers did not contract directly for a shorter time-to-sue provision. Travelers counters by arguing that freedom to contract principles control under *Udall* because Santa Fe was required by the Little Miller Act to accept the bond as satisfactory, making Santa Fe a party to the bond. We agree with Santa Fe.

## PUBLIC POLICY FORBIDS A SURETY FROM SHORTENING TIME-TO-SUE PROVISIONS IN A PERFORMANCE BOND UNLESS IT DIRECTLY CONTRACTS WITH THE GOVERNMENTAL ENTITY TO DO SO

**{5}** Section 13-4-18(A)(1) of the Little Miller Act provides, in relevant part:

Award of the contract shall be made pursuant to the Procurement Code [13-1-28 NMSA 1978] in the following manner:

(1) a performance bond satisfactory to the state agency or local public body, executed by a surety company authorized to do business in this state and said surety to be approved in federal circular 570 as published by the United States treasury department or the state board of finance or the local governing authority, in an amount equal to one hundred percent of the price specified in the contract[.]

Whether the public policy underlying the Little Miller Act allows sureties to contractually limit the time the governmental entity has to sue is a question of law that we review de novo. *State v. Lucero,* 2007-NMSC-041, ¶ 8, 142 N.M. 102, 163 P.3d 489 ("We review issues of statutory and constitutional interpretation de novo."); *K.R. Swerdfeger Constr., Inc. v. Bd. of Regents, Univ. of N.M.*, 2006-NMCA-117, ¶ 23, 140 N.M. 374, 142 P.3d 962 ("Whether

a contract is against public policy is a question of law for the court to determine from all the circumstances of each case." (internal quotation marks and citation omitted)).

**{6}** New Mexico appellate courts have stated that performance bonds are required by the Little Miller Act for the protection of the public and to assure performance of governmental contracts. *See N.M. State Highway & Transp. Dep't v. Gulf Ins. Co.*, 2000-NMCA-007, ¶ 16, 128 N.M. 634, 996 P.2d 424 ("The performance bond protects the State by ensuring completion of the contract[.]"); *Employment Sec. Comm'n v. C. R. Davis Contracting Co.*, 81 N.M. 23, 25, 462 P.2d 608, 610 (1969) ("Statutory bonds are required for the benefit and protection of the public."). In *Silver v. Fidelity & Deposit Co. of Maryland*, 40 N.M. 33, 40, 53 P.2d 459, 463-64 (1935), we articulated the legislative purpose for enacting the performance bond requirement of the Little Miller Act: to protect the public through the security afforded by the bond by assuring that claims will be paid.

**{7}** Section 13-4-18 reinforces this purpose by requiring that the performance of the contractor be bonded up to one hundred percent of the contract price by either a full performance bond or a combination performance bond and self-insurance by the governmental entity. *See* § 13-4-18 (A), (B). It is clear that the surety cannot unilaterally limit its exposure to the governmental entity. It must assume the same obligations to the governmental entity as did the contractor. *See Gulf Ins. Co.*, 2000-NMCA-007, ¶ 17 ("[B]y bonding the project, the surety steps into the shoes of not only the contractor, but also of the laborers and materialmen paid by it, and of the government."); *see also Gloucester City Bd. of Educ. v. Am. Arbitration Ass'n*, 755 A.2d 1256, 1265 (N.J. Super. 2000) (discussing a New Jersey statute for bonding on public works projects: "[i]n our view, the intent of *N.J.S.A.* 2A:44-143 and -147 is to require the surety to stand in the shoes of a defaulting principal and to be subject to any claim for which the principal would have been liable.").

**{8}** In addition, to permit the surety to unilaterally contract to guarantee something less than the contractor agreed to perform would make performance of the underlying agreement less certain. *See generally Colorado Structures, Inc. v. Ins. Co. of the West,* 167 P.3d 1125, 1138 n.13 (Wash. 2007) (en banc) ("Certainty of performance being the essential value of performance bonds, their worth is deeply undermined if sureties can regularly choose to ignore their obligations[.]"). By refusing to allow sureties to depart from the obligations of the contractor, we reinforce the principles of certainty that are valued in legal relationships. *See United Wholesale Liquor Co. v. Brown-Forman Distillers Corp.*, 108 N.M. 467, 471, 775 P.2d 233, 237 (1989) ("Great damage is done where businesses cannot count on certainty in their legal relationships and strong reasons must support a court when it interferes in a legal relationship voluntarily assumed by the parties." (internal quotation marks and citation omitted)).

**{9}** We do not intend to suggest that the contractor or the surety, or both, cannot contract for a shorter time-to-sue provision directly with a governmental entity. In *Udall* we upheld a time-to-sue provision as part of the contract "agreed to between the state and the insurers[.]" 112 N.M. at 126, 812 P.2d at 780. The rationale for our holding was that a

"party who executes and enters into a written contract with another is presumed to know the terms of the agreement, and to have agreed to each of its provisions[.]" *Id.* (internal quotation marks and citation omitted). Under such circumstances, the important public policy of freedom of contract mandated enforcement of the bargained-for time-to-sue provision.

{10}     This case, however, does not require adherence to the countervailing principle of freedom to contract. Whereas *Udall* involved a direct contractual relationship between the State and the surety, Santa Fe was neither in a direct relationship nor had it reached any agreement with Travelers. In this case, the performance bond agreement was between Travelers and Lone Mountain, and Santa Fe was an intended third-party beneficiary. *See United States v. Phoenix Indem. Co.*, 231 F.2d 573, 575 (4th Cir. 1956) (discussing a bond entered into between a surety and contractors: "[i]t is true that the United States was not a party to the contract or the bond, but the bond was made for the Government's protection and it is entitled to sue thereon as a third party beneficiary."). Its status as a third-party beneficiary does not imply that Santa Fe had the opportunity to negotiate the bond's time-to-sue provision. *See United States v. Seaboard Sur. Co.*, 817 F.2d 956, 961 (2d Cir. 1987) (where bond was signed by surety and contractor, held that "the government's rights are as a third-party beneficiary, not as a party. . . . [the federal] Miller Act required [the contractor] to obtain the performance bond, but that fact alone does not make the government a party to the bond." (citation omitted)). Traditionally, third-party beneficiaries can enforce the terms of a contract, but they are not considered to be in privity of contract, and therefore they are not in a position to actively negotiate the contract's terms. *See Leyba v. Whitley*, 120 N.M. 768, 771, 907 P.2d 172, 175 (1995) ("Although courts stop short of declaring an intended third-party beneficiary to be in privity of contract, such a party is accorded traditional contract remedies with respect to the bargain intended for his or her benefit.").

{11}     Travelers contends that Santa Fe had authority to negotiate all of the terms of the performance bond because Section 13-4-18(A)(1) requires the performance bond to be "satisfactory to the state agency or local public body[.]" As such, Travelers argues that Santa Fe had a duty to review every provision of the bond and reject any provision it found objectionable.[1] We believe Travelers reads too much into Section 13-4-18(A)(1).

{12}     Section 13-4-18(A)(1) requires the governmental entity to satisfy itself that the surety company is authorized to do business in New Mexico, is approved in federal circular 570, and that the amount of the bond is "equal to one hundred percent of the price specified in the contract[.]" *Id.* It is our responsibility to determine and effectuate the Legislature's intent,

---

[1] There is a disagreement concerning whether Santa Fe actually reviewed and approved the performance bond. The Court of Appeals acknowledged this issue but dismissed it, stating that the issue was whether Santa Fe had the opportunity to review the bond, not whether an actual review had occurred. *Travelers Cas. & Sur. Co.*, No. 28,944, slip op. at 7-9.

using the plain language of the statute as the primary indicator of its intent. *See State v. Ogden*, 118 N.M. 234, 242, 880 P.2d 845, 853 (1994). The plain meaning of Section 13-4-18(A)(1) is that the Legislature intended the performance bond to be satisfactory to the governmental entity regarding (1) the qualification of the surety company, and (2) the amount of the surety.

**{13}** Although Santa Fe has the responsibility to review performance bonds for these two elements, there is no indication that Santa Fe had a duty or the ability to negotiate any other terms of the bond with Travelers. Indeed, a governmental entity cannot accept a bond if the surety is not licensed to do business in New Mexico, is not approved in federal circular 570, or the amount of the bond does not equal one hundred percent of the contract price or the pre-solicitation bonding requirement. *See* § 13-4-18(A) ("Award . . . *shall* be made . . . in the following manner . . ." (emphasis added)); *State v. Guerra*, 2001-NMCA-031, ¶ 14, 130 N.M. 302, 24 P.3d 334 ("The word 'shall' as used in a statute is generally construed to be mandatory."). The governmental entity cannot negotiate a departure from these mandatory performance bond requirements.

**{14}** Finally, we are persuaded by the argument of amici curiae that holding otherwise would do harm to the many small local governmental bodies of New Mexico, many of which are neither equipped to review every detail of every bond that comes before them, nor are they in a position to negotiate with surety companies. We decline to hold that the Legislature intended for governmental entities to be held to the terms of a bond, no matter how onerous, simply because they have the responsibility to review the bond for certain mandatory statutory requirements when they are not themselves parties to the bond. The burden of inspecting a performance bond for the mandatory statutory requirements is not too laborious. As demonstrated in this case, Santa Fe could fulfill its obligation by reviewing the cover page of the bond to satisfy itself that the surety was qualified and that the bond amount was adequate to cover the contract price. No further review was necessary. This task is an undertaking that even the smallest understaffed governmental entity can perform.

**{15}** By the time a surety negotiates with a government contractor to provide a performance bond, all of the terms of the underlying government contract are known, as is the amount necessary to guarantee the contract price. The surety must stand in the contractor's shoes and the terms of the underlying agreement define the extent to which the surety must guarantee performance. It is the contractor's responsibility under the Little Miller Act to obtain the performance bond. The contractor and the surety are not at liberty to negotiate an agreement to guarantee something less. Similarly, the governmental entity is not required to negotiate a separate agreement with the surety.

**{16}** In this case, Lone Mountain was bound by the six-year statute of limitations. Travelers recognized its vulnerability to a longer time-to-sue provision when it added the following language to its own time-to-sue provision: "If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable." Because neither Travelers nor Lone

Mountain directly contracted with Santa Fe for a shorter time-to-sue provision, the two-year time-to-sue provision in the bond violates public policy and is unenforceable against Santa Fe. As such, Travelers is bound by the six-year statute of limitations as stated in Section 37-1-3(A).

**CONCLUSION**

**{17}** The purposes of Section 13-4-18(A)(1) are to protect the public fisc and assure the performance of government contracts. These purposes are frustrated if the government contractor and the surety are permitted to contract for a shorter time-to-sue than that which governs the contract between the government and the contractor. Therefore, the two-year time-to-sue provision in the performance bond issued by Travelers violates public policy and is not binding on Santa Fe, since Santa Fe did not directly contract for the two-year provision. We reverse both the Court of Appeals and the district court and remand to district court for further proceedings consistent with this opinion.

**{18}   IT IS SO ORDERED.**

_____

**EDWARD L. CHÁVEZ, Chief Justice**

**WE CONCUR:**

_____

**PATRICIO M. SERNA, Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**RICHARD C. BOSSON, Justice**

_____

**CHARLES W. DANIELS, Justice**

**Topic Index for *City of Santa Fe v. Traveler's Casualty and Surety Co.*, No. 31,549**

| | |
|---|---|
| **CM** | **COMMERCIAL LAW** |
| CM-CT | Contractors and Subcontractors |
| | |
| **CN** | **CONTRACTS** |
| CN-PP | Public Policy |
| CN-SB | Surety or Performance Bonds |
| | See Also, INSURANCE, Sureties and Bonds |

| | |
|---|---|
| CN-SL | Statute of Limitations |
| CN-TL | Time Limitations |
| | See Also, CONTRACTS, Statutes of Limitations |

| | |
|---|---|
| **GV** | **GOVERNMENT** |
| GV-BI | Bond Issues |
| GV-PC | Public Contracts and Purchase |
| | See Also: CONTRACTS, Public Construction |

| | |
|---|---|
| **IN** | **INSURANCE** |
| IN-SB | Sureties and Bonds |
| IN-TC | Time to Sue Clause |