**Certiorari Granted, October 25, 2011, No. 33,224**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-110**

**Filing Date:  August 23, 2011**

**Docket No. 29,945**

**THE BANK OF NEW YORK as Trustee for
POPULAR FINANCIAL SERVICES
MORTGAGE/PASS THROUGH
CERTIFICATE SERIES #2006,**

> **Plaintiff-Appellee,**

**v.**

**JOSEPH A. ROMERO and MARY ROMERO,
a/k/a MARY O. ROMERO a/k/a MARIA ROMERO,**

> **Defendants-Appellants.**

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY
James A. Hall, District Judge**

Little & Dranttel, P.C.
Elizabeth M. Dranttel
Peggy A. Whitmore
Albuquerque, NM

Severson & Werson
Jan T. Chilton
San Francisco, CA

for Appellee

Joshua R. Simms, P.C.
Joshua R. Simms
Albuquerque, NM

for Appellant

1

Santa Fe Neighborhood Law Center
Frederick M. Rowe
Daniel M. Yohalem
Santa Fe, NM

for Amici Curiae

**OPINION**

**VANZI, Judge.**

**{1}** In 2006, Joseph and Mary Romero (the Romeros) refinanced the mortgage on their home in order to pay off existing debts and loans. When they defaulted two years later, The Bank of New York, as trustee for Popular Financial Services Mortgage/Pass Through Certificate Series #2006, (the Bank) started foreclosure proceedings. In response to the complaint for foreclosure, the Romeros counterclaimed against the Bank, alleging, among other things, predatory lending practices. At issue in this appeal is whether the district court correctly determined that the Bank did not engage in "flipping" the loan in violation of NMSA 1978, Section 58-21A-4(B) (2003) (amended 2009), of the Home Loan Protection Act (HLPA), or violate the Unfair Practices Act (UPA), NMSA 1978, Sections 57-12-1 through -26 (1967, as amended through 2009). Because substantial evidence supports the district court's findings, we affirm.

**BACKGROUND**

**{2}** The Romeros inherited their home, located in Chimayo, New Mexico, from Joseph Romero's father in the early 1970s. They have owned the property ever since. Prior to refinancing the mortgage at issue in this case, the Romeros were making monthly payments on their home of approximately $1,200 to New Century Mortgage Corporation (New Century). In early 2006, the Romeros were behind on the New Century loan, which had an estimated payoff of $176,450.08, and were in debt on credit card and other loan obligations. Mr. Romero wanted to refinance his home loan in order to repay his debts and to revitalize the Romeros' clothing and music store in Espanola, New Mexico. As a result, the Romeros accepted and signed a new home loan offered by Equity One, Inc. (Equity One) for $227,240 that repaid their existing home loan, credit card debt, and other obligations. The loan also gave the Romeros $31,164.82 in cash to pay bills and restock their store. Monthly payments of $1,683.28 became due starting August 1, 2006.

**{3}** In September 2007, the Romeros stopped making payments on their mortgage and note. They fell behind in repaying the home loan, and by the end of the year, the Romeros owed over $8,000 in payments and fees. They were also eventually locked out of their store for failure to pay rent. The Romeros agree that they were properly served with notices of delinquency and default. Although the Romeros were given an opportunity to cure their

2

default, they did not do so; and on April 1, 2008, the Bank, as trustee/assignee of the Romeros' mortgage, filed its complaint for foreclosure.

{4}     The Romeros answered the complaint and admitted that they had entered into the mortgage and note and that they were several payments behind on the loan.  The Romeros also counterclaimed against the Bank, alleging deceptive loan practices and unfair trade practices.  The Romeros' basic contention is that Equity One took advantage of them—two individuals with limited education— and coerced them to incur a debt that Equity One knew they could never afford.  Based on these allegations, the Romeros claimed that the Bank had (1) failed to disclose the "actual rate upon the home loan" as required by the HLPA; (2) had "flipp[ed]" the loan in violation of Section 58-21A-4(B); (3) had engaged in predatory lending practices including using deceptive marketing, concealing fees and costs, and structuring the loan to strip the Romeros of their equity; and (4) had violated the federal Truth in Lending Act (Regulation Z), Real Estate Practices Act, as well as the New Mexico HLPA and UPA.

{5}     After a bench trial, the district court entered findings and conclusions, ruling in favor of the Bank and ordering the sale of the Romeros' home.  The district court found, among other things, that the Bank did not engage in "flipping" because the loan resulted in a "reasonable, net tangible benefit" to the Romeros, nor did it violate the UPA.  Further, the district court found that the HLPA did not apply to the Bank because it was preempted by federal law.  The district court ruled against the Romeros on all of their counterclaims.

{6}     On appeal, the Romeros raise five issues challenging seven of the district court's findings of fact and three of its conclusions of law.  The Romeros contend that, with the exception of the court's ruling on preemption, which they claim fails as a matter of law, the remaining four issues fail based on lack of substantial evidence.  Because we conclude that substantial evidence exists for each of the district court's findings and conclusions, and we affirm on those grounds, we do not address the Romeros' preemption argument.

**DISCUSSION**

**Standard of Review**

{7}     As we have noted, the issue raised by the Romeros and that we address in this appeal is whether substantial evidence exists to support certain findings and conclusions made by the district court.  In accordance with our standard of review, the judgment of the trial court will not be disturbed on appeal if the findings of fact entered by the court are supported by substantial evidence, are not clearly erroneous, and are sufficient to support the judgment.  *See Mascarenas v. Jaramillo*, 111 N.M. 410, 412, 806 P.2d 59, 61 (1991) (stating that it is the appellate court's duty to interpret the trial court's findings to determine whether they are sufficient to support the judgment).  When considering a claim of insufficient evidence, we resolve "all disputes of facts in favor of the successful party and indulge[] all reasonable inferences in support of the prevailing party." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177.  Thus, "[t]he question is not whether substantial evidence exists to support the opposite result, but rather whether such

3

evidence supports the result reached." *Id.* Finally, "we will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Id.*

{8}     Before we turn to the issues in this case, however, we express our concern about the Romeros' brief in chief, which, in large measure, fails to conform to the New Mexico Rules of Appellate Procedure. The brief contains almost no argument, it fails to cite the record, and it fails to present the evidence as a whole. In order to properly support a challenge to the sufficiency of evidence, the argument section of the brief in chief must include "citations to authorities, record proper, transcript of proceedings or exhibits relied on." Rule 12-213(A)(4) NMRA. This Court has no duty to review an argument that is not adequately developed. *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to entertain a cursory argument that relied on several factual assertions that were made without citation to the record). Further, where a party fails to cite any portion of the record to support its factual allegations, we need not consider its argument on appeal. *Santa Fe Exploration Co. v. Oil Conservation Comm'n*, 114 N.M. 103, 108, 835 P.2d 819, 824 (1992). Although the deficiencies in the Romeros' brief make it almost impossible to address many of their assertions, we consider their arguments where we can.

{9}     We begin our analysis with the issue of whether the Bank violated the HLPA's requirement that a borrower receive a reasonable, tangible net benefit as this appears to be the crux of the Romeros' appeal. *See* § 28-21A-4(B). We then turn to their remaining arguments.

**Substantial Evidence Supports the District Court's Finding That the Romeros Received a Reasonable, Tangible Net Benefit**

{10}    The New Mexico Legislature enacted the HLPA in 2003 in response to the harm that predatory lending schemes were causing residents, resulting in the loss of home equity and an increase in foreclosures. NMSA 1978, § 58-21A-2 (2003). Like most states in the nation, our Legislature has found that such abusive practices are often intended to drive unsophisticated consumers into making ill-advised financial decisions and, as a result, too many homeowners find themselves victims of overreaching creditors. Under the HLPA, a proposed loan that refinances an existing home loan has to sufficiently protect the interests of the borrower from financial harm.

{11}    Although it underwent substantial revisions in 2009, two provisions of the HLPA applied to the Romeros' 2006 loan. The first, Section 58-21A-4, applied to all home loans and included restrictions on predatory lending practices such as "flipping" a loan and encouraging default in connection with refinancing the loan. On the other hand, NMSA 1978, Section 58-21A-5 (2003) (amended 2009), sets forth limitations and prohibited practices for "high-cost" mortgages. High-cost loans are those that exceed either a rate or a points and fees threshold. NMSA 1978, § 58-21A-3(I) (2003) (amended 2009).

{12}    On appeal, the Romeros do not challenge the district court's finding that their loan did not meet the "total points and fees threshold" or the "rate threshold" and, as a result, that their mortgage was not a "high-cost" home loan under Section 58-21A-5 of the HLPA. We

4

therefore consider the Romeros' argument as it pertains to Section 58-21A-4 only. The relevant provision of that section provides:

> B. No creditor shall knowingly and intentionally engage in the unfair act or practice of flipping a home loan. As used in this subsection, "flipping a home loan" means the making of a home loan to a borrower that refinances an existing home loan when the new loan does not have reasonable, tangible net benefit to the borrower considering all of the circumstances, including the terms of both the new and refinanced loans, the cost of the new loan and the borrower's circumstances.

Section 58-21A-4(B).

{13} The Romeros argue that substantial evidence does not support the district court's findings that the loan they received provided a "reasonable, tangible net benefit" to them, as that term is used in Section 58-21A-4(B). In particular, they challenge the following findings of fact and conclusions of law entered by the district court:

> 62. [The Bank] did not violate the [HLPA], [UPA], Regulation Z, or the Real Estate Settlement Procedures Act in the extension and servicing of the [Romeros'] loan.
>
> . . . .
>
> 64. The subject loan resulted in the payoff of several of the Romeros' debts, and a $31,164.82 cash payment to the Romeros. The subject loan provided a reasonable, net tangible benefit to the Romeros.
>
> . . . .
>
> H. [The Bank] did not engage in "flipping" as set forth in . . . [S]ection 58-21A-4(B) . . . as the subject loan resulted in a reasonable, net tangible benefit to the [Romeros].
>
> I. [The Bank] did not violate the [UPA.]

{14} The Romeros' argument is not entirely clear. They do not challenge the district court's reasoning that the payoff of several of the Romeros' debts and a $31,164.82 cash payment to the Romeros constituted a reasonable, tangible net benefit. Instead, they argue that the new loan did not confer upon them a reasonable, tangible net benefit because the loan was made with "no regard to the ability of the Romeros' to repay" and because the loan "clearly stripped [them] of their entire equity." The Romeros go on to say that "[i]f [Equity One] had asked for tax returns, [Equity One] would certainly have realized that Mr. Romero had clearly misunderstood what the question was asking for when they asked for his gross monthly income." We begin with a review of the district court's findings and then turn to the Romeros' argument.

5

**{15}** The HLPA does not specify under what circumstances a "reasonable, tangible net benefit" will be considered to exist. Here, the district court took several factors into consideration in making that determination. The court began by noting that the Romeros wanted to refinance their prior mortgage, reducing the equity in their property in order to pay off other debts. The Romeros' prior mortgage was in default at the time they signed the new loan, leaving their home subject to foreclosure proceedings by New Century. In addition, the Romeros were in debt and needed funds to revitalize their music and clothing store in Espanola. In evaluating whether there was a reasonable, tangible net benefit to the Romeros, the district court took into consideration those aspects of the 2006 loan that it found were not beneficial to the Romeros, including the fact that their new loan had a higher monthly payment, it required payment of costs and fees for the refinance, and the overall term of the loan was extended. The district court nevertheless concluded that the Romeros received a reasonable, tangible net benefit. It specifically found that the Romeros received a minor benefit insofar as a lower rate was extended on the loan for an additional year, there was a slightly lower cap on the interest rate, and the Romeros had signed a form acknowledging they had received a reasonable, tangible net benefit. Of greater significance to the district court, however, was the fact that with the new loan, the Romeros were able to pay off about $9,000 in other debts, and they received a cash payment in excess of $30,000 as a result of the transaction. Thus, the district court concluded that under these circumstances, "the subject loan resulted in a reasonable, net tangible benefit to the [Romeros]." We are persuaded that these findings—in particular, the cash out of over $40,000—support the district court's determination that, considering all of the circumstances, the Romeros received a reasonable, tangible net benefit from the 2006 loan.

**{16}** As we have noted, the Romeros make a generalized argument that the refinanced loan was made without regard to their ability to repay and that it stripped them of their entire equity. They contend that "[c]ourts outside New Mexico have found that these predatory practices are not acceptable." However, the Romeros do not cite to any case in support of this statement. Where a party cites no authority to support an argument, we may assume no such authority exists. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). The Romeros do not explain why the ability to repay a loan is or should be a factor in assessing whether a borrower has received a reasonable, tangible net benefit under New Mexico law. This Court has no duty to review an argument that is not adequately developed. *Headley*, 2005-NMCA-045, ¶ 15 (declining to entertain a cursory argument).

**{17}** Notwithstanding the Romeros' failure to develop their argument, we nevertheless make two observations. First, we note that the issue of repayment ability and the resulting prohibition on equity stripping is specifically addressed in the HLPA with respect to high-cost home loans. *See* § 58-21A-4(C), (N). There is no such requirement in the provision prohibiting flipping a home loan. *See* § 58-21A-4(B). This Court assumes that the Legislature was fully aware of the language in all of the HLPA's statutory provisions when it enacted Section 58-21A-4(B) and that it chose not to require consideration and documentation of a borrower's reasonable ability to repay the loan when determining what tangible benefit, if any, the borrower would receive from a mortgage loan. *See Jicarilla Apache Nation v. Rodarte*, 2004-NMSC-035, ¶ 15, 136 N.M. 630, 103 P.3d 554 ("We presume that the Legislature acts with full knowledge of, and consistent with, existing

6

legislation."). We are mindful that while the ability to repay a loan is an important consideration when otherwise assessing a borrower's financial situation, we will not read such meaning into the statute's "reasonable, tangible net benefit" language simply because we are asked to do so.

**{18}** Additionally, it is noteworthy that in 2009, the Legislature amended Section 58-21A-4 of the HLPA setting additional minimum standards and prohibited practices for creditors making home loans. *See* § 58-21A-4(C)-(N). Under the new version of the statute, several provisions have been added, including Section 58-21A-4(C), which provides, in part, "No creditor shall make a home loan without documenting and considering the borrower's reasonable ability to repay that loan pursuant to its terms." Similarly, Section 58-21A-4(D) prohibits the making of a home loan without determining the borrower's ability to repay costs. Section 58-21A-4(B), however, is identical to the prior version. The 2009 amendments are not applicable to this case.

**{19}** We believe that the reasonable, tangible net benefit standard requires a finding that the benefit of making the transaction outweighs the costs associated with the loan. In other words, a lender must make a reasonable inquiry of the borrower that refinancing the existing home loan is in the borrower's interest. In this case, whether there was a reasonable, tangible net benefit to the Romeros depended in large part on the importance of curing the default on their prior mortgage, as well as paying off their debts and getting an infusion of cash in an effort to get their business back on its feet. The district court found that at the time of the loan, the refinanced mortgage enabled the Romeros to realize their goals of obtaining debt relief and attempting to save their business. We agree with the district court that, looking back, the price to the Romeros was high because their business ultimately failed, and they were unable to make the payments on their new loan. However, we also agree with the district court that viewing the new loan at the time it was accepted, the Romeros received a reasonable, tangible net benefit from the 2006 mortgage and note because it could have salvaged their business and saved their home from foreclosure by New Century. For these reasons, we affirm the district court's ruling that the Bank did not violate Section 58-21A-4(B) of the HLPA or the UPA.

**The Bank of New York, as Trustee for Popular Financial Services, Holds the Romeros' Note and Mortgage**

**{20}** The Romeros contend that there is not substantial evidence to support the district court's finding that the Romeros' note and mortgage were held by the Bank and that, as the legal and beneficial owner, the Bank is entitled to enforce the note and mortgage. The sum of the Romeros argument is that "[t]he assignment stamps or endorsements that appear on the note are to JP Chase Morgan, not the Bank of New York." They point to no other evidence, nor do they provide any support or citation for the proposition that such an endorsement is required to transfer rights in a promissory note. *In re Adoption of Doe*, 100 N.M. at 765, 676 P.2d at 1330 (stating that an appellate court will not consider an issue if no authority is cited in support of the issue, as absent cited authority to support an argument, the court assumes no such authority exists). Furthermore, we have said that in order to challenge the district court's findings of fact as not supported by substantial evidence, a

7

party must provide this Court with a summary of all the evidence bearing on the finding being challenged, including the evidence that supports the trial court's determination, regardless of interpretation. *Martinez v. Sw. Landfills, Inc.*, 115 N.M. 181, 184-85, 848 P.2d 1108, 1111-12 (Ct. App. 1993). The Romeros have failed to do this.

{21}    Our review of the record shows that an assignment of mortgage was admitted into evidence at trial without objection. The assignment transferred the mortgage and note at issue in this case from Equity One to the Bank in June 2008. Kevin Flanagan, a senior litigation processor for Litton Loan Servicing, a service provider for the Bank, testified that the note and mortgage had been assigned to the Bank and that it had not been assigned to another financial institution. With no evidence to the contrary, we conclude that the record provides substantial evidence for the district court's factual determination that the Bank is the legal owner of the note and mortgage and had standing to enforce it when the complaint for foreclosure was filed.

**The District Court Did Not Abuse Its Discretion When It Rejected Harold Johnson's Expert Opinions**

{22}    After hearing the testimony of the Romeros' expert witness, Harold Johnson, the district court determined that Johnson did "not have sufficient knowledge, skill, experience, training[,] and education under Rule 11-702 [NMRA] to testify as an expert witness in this case." Accordingly, the district court did not admit Johnson's opinion testimony into evidence. The standard of review on appeal for a district court's decision regarding the admission of expert testimony is abuse of discretion. "[T]he admission of expert testimony or other scientific evidence is peculiarly within the sound discretion of the trial court and will not be reversed absent a showing of abuse of that discretion." *State v. Alberico*, 116 N.M. 156, 169, 861 P.2d 192, 205 (1993). "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153.

{23}    The Romeros' argument that there is not substantial evidence for the district court's findings concerning Johnson's expertise is reduced to a single sentence: "Where, as a bare investigator his opinion or knowledge of the Romero[s'] loan is quite substantial." The Romeros do not explain why they believe Johnson's knowledge is substantial or why he was qualified to render expert opinions about the legality of their loan, nor do they challenge any of the district court's specific findings as inconsistent with other evidence in the record.

{24}    The district court found that although Johnson had worked as a loan officer, his experience with respect to the type of loan at issue was very limited. Johnson testified that he had only worked as a loan officer under a broker's supervision and that he had only occasionally performed HLPA calculations. He had no certifications, no specific training or classes related to the issues in the case, and had never testified as an expert. The district court also determined that Johnson's opinions were not credible because they consisted of "novel legal arguments regarding the interpretation of applicable statutes and rules which are not supported by existing law." Given these uncontested findings, we conclude that

substantial evidence supported the exercise of the district court's discretion to exclude the testimony of Johnson and to exclude his opinions about the Romeros' loan.

**Substantial Evidence Supports the District Court's Finding That the Romeros Had a Sufficient Opportunity to Review the Loan Closing Documents**

{25}    Lastly, we turn to the Romeros' assertion that they did not have an adequate opportunity to review the loan closing documents and, therefore, the status of their loan under the HLPA is necessarily affected.  **[BIC 8]**  The Romeros raise this issue under the substantial evidence standard.  As we have noted, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate support for a conclusion." *Samora v. Bradford*, 81 N.M. 205, 207, 465 P.2d 88, 90 (Ct. App. 1970).  When determining whether a finding of fact is supported by substantial evidence, we review the evidence in the light most favorable to upholding the finding and indulge all reasonable inferences in support of the district court's decision. *Id.*

{26}    The Romeros cite to evidence presented at trial that when they arrived at the title company for their closing, the loan documents were not at the title company,  they had to wait, and the time allotted for the closing was shortened as a result.  Mr. Romero testified that he completed the 12th grade and that it would take him at least a week with a dictionary to understand the documents.  Mrs. Romero only completed the 10th grade.  It appears that the Romeros are arguing that they did not have enough time to review the loan documents, and we can only assume that this means they would not have signed the documents if they understood what the documents said.

{27}    The district court found, however, that the Romeros did have an opportunity to review all of the loan closing documents and that the closing agent made a good faith effort to explain those documents to the Romeros at the closing.  Further, Mr. Romero testified that they received copies of the loan documents and had three days to examine them and exercise their right to rescind the loan if they had problems with the transaction.  We acknowledge that loan documents are often lengthy, complex, and difficult to understand.  However, upon our review of the record, coupled with the fact that the Romeros had entered into a mortgage previously and were familiar with the process, we cannot conclude that substantial evidence did not support the district court's findings that the Romeros had adequate time to review the documents during the closing and after they had signed the loan.

{28}    Without question, the Romeros' financial situation has greatly deteriorated over the past several years.  Their debts have continued to pile up, they lost their business, and the Bank now stands positioned to sell their family home.  Notwithstanding this unfortunate set of circumstances, however, we conclude that the record supports the district court's finding that neither Equity One nor the Bank violated the HLPA in this case.

**CONCLUSION**

{29}    For the reasons set forth above, we affirm the decision of the district court.

**{30}**   IT IS SO ORDERED.

 

_____
                **LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**CYNTHIA A. FRY, Judge**

**Topic Index for** *Bank of New York v. Romero*, **No. 29,945**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-AJ | Appellate Jurisdiction |
| AE-FE | Fundamental Error |
| AE-HE | Harmless Error |
| AE-PA | Preservation of Issues for Appeal |
| AE-SR | Standard of Review |
| AE-SB | Substantial or Sufficient Evidence |
| | |
| **CM** | **COMMERCIAL LAW** |
| CM-CP | Consumer Protection |
| CM-NI | Negotiable Instruments |
| CM-UP | Unfair Practices Act |
| | |
| **CN** | **CONTRACTS** |
| CN-PN | Promissory Notes |
| | |
| **EV** | **EVIDENCE** |
| EV-EW | Expert Witness |
| | |
| **FL** | **FEDERAL LAW** |
| FL-PE | Preemption |
| | |
| **MS** | **MISCELLANEOUS STATUTES** |
| MS-HP | Home Loan Protection Act |
| MS-UP | Unfair Practices Act |
| | |
| **PR** | **PROPERTY** |
| PR-FC | Foreclosure |
| PR-MG | Mortgages |