Certiorari Denied, August 6, 2012, No. 33,646

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMCA-090

Filing Date: April 26, 2012

Docket No. 30,584

STATE OF NEW MEXICO ex rel.
OFFICE OF THE STATE ENGINEER,

Plaintiff-Appellee,

v.

ELEPHANT BUTTE IRRIGATION DISTRICT,

Defendant,

and

TOMAS J. GONZALEZ, MARIANA A.
GONZALEZ, DON P. GONZALEZ,
SANTIAGO GONZALEZ, and RAMONA
GONZALEZ-JIMENEZ,

Defendants-Appellants,

and

BONNIE MAYORGA, DONACIANO E.
GONZALEZ, ADRIAN R. GONZALEZ,
BERTHA D. TORAZAS, and ANDREA
GONZALEZ OGAZ,

Sub-File Defendants/Appellants.

APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
Jerald A. Valentine, District Judge

Gary K. King, Attorney General
DL Sanders, Special Assistant Attorney General

Richard A. Allen, Special Assistant Attorney General
Martha C. Franks, Special Assistant Attorney General
Santa Fe, NM

for Appellee

Deschamps & Kortemeier Law Offices, P.C.
Stephen Karl Kortemeier
Socorro, NM

for Appellants

**OPINION**

**SUTIN, Judge.**

**{1}**    The bifurcated part of this case involving solely the issues of abandonment and forfeiture of water rights was tried by a special master.  A special master determined that Defendants' irrigation rights were abandoned and forfeited, and recommended "that the [c]ourt enter judgment determining that [D]efendants . . . have no surface or [groundwater] rights appurtenant to the Property for the purpose of irrigation[.]"  The district court adopted the special master's report in its entirety.  Defendants raise several points of error on appeal of the court's order adopting the special master's report and denying their objections.  We affirm.

**BACKGROUND**

**{2}**    Defendants are co-owners of land acquired in 1881 by ancestors by way of United States patents and also acquired from a transferor who also received a patent in 1881, bringing the total of the patented land to 253.5 acres.  Due to a flood in 1884 that changed the course of the Rio Grande, the patented land became isolated on one side of the river.  In about 1940, the International Boundary and Water Commission (IBWC) acquired a small portion of the land that at the time constituted a portion of the bed of the Rio Grande.

**{3}**    Evidence relating to irrigated acreage showed that portions of the property had been farmed and irrigated before 1956.  Defendants did not farm after 1956, and water has not otherwise been put to beneficial use on any of the property.  Defendants contended that this non-use was justified because lack of physical access to the property made it impractical and too difficult for them to farm.

**{4}**    More particularly, Defendants claimed that the IBWC acquisition eliminated access to and across the river to their land and that other contiguous lands were held by the Bureau of Land Management (BLM).  They claimed that, as a consequence, they were left with

2

"surreptitious crossings of the river when the flow was slight." The special master found[1] that, although Defendants claimed that changed conditions after 1956 made farming even more difficult than it was before 1956, "the record contain[ed] no credible evidence to support this assertion."

{5}     Defendants claim ownership of water rights sufficient in amount to irrigate the entire property they presently own.  The district court determined that Defendants both forfeited and abandoned their water rights.  In addition, the court determined that the forfeiture was neither excused under the forfeiture statute, nor did Defendants establish an intent not to abandon their water rights.

{6}     In claiming error in the court's abandonment and forfeiture rulings, Defendants argue (1) the statutory forfeiture violated Article XVI, Sections 1 and 2 of the New Mexico Constitution; (2) the State Engineer lacked statutory authority to pursue forfeiture for events occurring prior to 1981; (3) the court erred in finding that the land in question consisted of less than fifty acres; (4) the court's findings failed to recite that they were based on clear and convincing evidence; (5) certain of the court's findings in regard to access to the land were not supported by substantial evidence; (6) the court erred in concluding that the presumption of intent to abandon met the clear and convincing standard of proof; and (7) the court erroneously entered judgment without determining the issue of Defendants' demand for a jury trial.  For the reasons that follow, we reject each of Defendants' arguments.

## DISCUSSION

### 1.     The Constitution and Statutory Authority Issues

{7}     Defendants assert that the "court erred, as a matter of law, in concluding that Defendants' water rights were subject to statutory forfeiture."  They break the point down into two subpoints:  (1) "[s]tatutory forfeiture, as found in this case, violates the provisions of [Article] XVI, [S]ections 1 and 2 of the New Mexico Constitution"; and (2) "[t]he State Engineer lacks statutory authority to pursue forfeiture in the Lower Rio Grande for events occurring prior to 1981."

### a.     The Constitutional Issue

{8}     We review interpretation and application of constitutional and statutory provisions de novo. *See City of Santa Fe v. Travelers Cas. & Sur. Co.*, 2010-NMSC-010, ¶ 5, 147 N.M. 699, 228 P.3d 483.

---

[1] Throughout this Opinion, because the district court adopted the special master's findings of fact and conclusions of law in their entirety, the special master's findings and conclusions are also findings and conclusions of the district court, and vice-versa.

**{9}**   Defendants' constitutional point is that, under Article XVI, Sections 1 and 2, pre-Constitution appropriation of water for beneficial use by ancestors gave rise to vested water rights that cannot be affected by the forfeiture legislation.  Defendants argue that "the crux of this appeal is whether the expressions in [Article] XVI, [S]ections 1 and 2 continue to have any meaning in light of the enormous pressure to 'find' forfeited water rights in order to fuel expansion and growth dependent upon an increasingly scarce resource."  In that the issues decided in this bifurcated proceeding are a part of a sub-file and part of the larger Lower Rio Grande adjudication that was filed in 1996, Defendants assert that "[t]his is not the time, or the case, to rewrite established New Mexico water law simply because of economic pressure in light of the need to adjudicate the Lower Rio Grande stream system."

**{10}**   Article XVI, Section 1 provides that "[a]ll existing rights to the use of any waters in this state for any useful or beneficial purpose are hereby recognized and confirmed."  Defendants assert that this constitutional provision protects water rights existing before the adoption of the Constitution, "as it must."  Defendants also rely on *State ex rel. State Game Comm'n v. Red River Valley Co.*, 51 N.M. 207, 217, 182 P.2d 421, 427 (1945), which states, "the New Mexico [C]onstitution[] . . . could not . . . operate to deprive [any person] of any right which may have vested prior to 1911, the date of the adoption and approval of the [C]onstitution."

**{11}**   Article XVI, Section 2 provides that "[t]he unappropriated water of every natural stream, perennial or torrential, within the state of New Mexico, is hereby declared to belong to the public and to be subject to appropriation for beneficial use, in accordance with the laws of the state.  Priority of appropriation shall give the better right."  Defendants assert that the import of "unappropriated" is that "previously appropriated water is excluded."  Along this line, Defendants argue "that after the water code was adopted, it became the exclusive means for acquiring water rights[,]" implying "that it was not the exclusive means for acquiring water rights prior to adoption" of the Constitution.

**{12}**   Carrying these positions further, Defendants argue that because the right to use water is determined by the date of appropriation, *Yeo v. Tweedy*, 34 N.M. 611, 617, 286 P. 970, 973 (1929), the water right becomes "vested" when the water is placed to beneficial use, *Eldorado Util., Inc. v. State ex rel. D'Antonio*, 2005-NMCA-041, ¶ 10, 137 N.M. 268, 110 P.3d 76.  Defendants further point out that, under the Desert Land Act of 1877, 43 U.S.C.A. §§ 321 to 339, entry upon public lands "required the filing of a declaration of intent to reclaim desert land by conducting water upon it and, within [three] years after filing the declaration, 'making satisfactory proof' of the reclamation of said tract of land 'in the manner aforesaid'"; upon which the entrant "shall receive a patent."

**{13}**   Thus, according to Defendants, the 1881 patents for 253.5 acres then and now constitute "prima facie evidence of having made 'satisfactory proof'" that the land in question covered by the 1881 patents "had been reclaimed by conveying water upon it."  In Defendants' view, "the fact of the patents" established that the owners "had, in fact, irrigated the acreage prior to 1881" and that "the date of appropriation [was] at least 1881[.]"

4

Therefore, Defendants claim the date of appropriation to be 1881 and argue that the forfeiture statute cannot be applied retroactively to affect those 1881 vested rights. *See Nelson v. Homier Distrib. Co.*, 2009-NMCA-125, ¶ 22, 147 N.M. 318, 222 P.3d 690 (stating that "[a] statute . . . is considered retroactive if it impairs vested rights acquired under prior law or requires new obligations, imposes new duties, or affixes new disabilities to past transactions" (alteration and omission in original) (internal quotation marks and citation omitted)).

**{14}** Defendants' arguments are not persuasive. "Beneficial use shall be the basis, the measure[,] and the limit of the right to the use of water." N.M. Const. art. XVI, § 3; NMSA 1978, § 72-1-2 (1907). "[T]he continuance of the title to a water right is based upon continuing beneficial use[.]" *State ex rel. Reynolds v. South Springs Co.*, 80 N.M. 144, 147, 452 P.2d 478, 481 (1969). The 1907 territorial water code that was in force when the Constitution was adopted recognized the validity of water rights existing upon the adoption of the water code and provided that "the [water] rights of the owners thereof shall be subject to regulation, adjudication[,] and forfeiture for abandonment, as provided in this act." 1907 N.M. Laws, ch. 49, § 59. The Constitution confirmed that all territorial laws in force at the time of its adoption (to the extent that they were not inconsistent with the Constitution) remained in force. N.M. Const. art. XXII, § 4. In 1911, our Supreme Court indicated that it was provided by statute that "the failure to beneficially use all or any part of the water for which a right of use has vested, for the purpose for which it was appropriated or adjudicated, for a period of four years, shall cause the reversion of such unused water to the public[.]" *Hagerman Irrigation Co. v. McMurry*, 16 N.M. 172, 179-80, 113 P. 823, 824 (1911).

**{15}** NMSA 1978, Section 72-5-28(A) (1997) (amended 1998 and 2002), the surface water forfeiture statute, reads:

> When the party entitled to the use of water fails to beneficially use all or any part of the water claimed by him, for which a right of use has vested for the purpose for which it was appropriated or adjudicated, except the waters for storage reservoirs, for a period of four years, such unused water shall, if the failure to beneficially use the water persists one year after notice and declaration of nonuser given by the state engineer, revert to the public and shall be regarded as unappropriated public water; provided, however, that forfeiture shall not necessarily occur if circumstances beyond the control of the owner have caused nonuse, such that the water could not be placed to beneficial use by diligent efforts of the owner; and provided that periods of nonuse when irrigated farm lands are placed under the acreage reserve program or conservation reserve program provided by the federal Food Security Act of 1985, P.L. 99-198, shall not be computed as part of the four-year forfeiture period; and provided, further, that the condition of notice and declaration of nonuser shall not apply to water that has reverted to the public by operation of law prior to June 1, 1965.

NMSA 1978, Section 72-12-8(A) (1997) (amended 1998 and 2002), the groundwater forfeiture statute, reads:

> When for a period of four years the owner of a water right in any of the waters described in Sections 72-12-1 through 72-12-28 NMSA 1978 or the holder of a permit from the state engineer to appropriate any such waters has failed to apply them to the use for which the permit was granted or the right has vested, was appropriated or has been adjudicated, the water rights shall be, if the failure to beneficially use the water persists one year after notice and declaration of nonuser given by the state engineer, forfeited and the water so unused shall revert to the public and be subject to further appropriation; provided that the condition of notice and declaration of nonuser shall not apply to water that has reverted to the public by operation of law prior to June 1, 1965.

**{16}** No beneficial use of water occurred under Defendants' claimed water rights since 1956, including nine consecutive years of nonuse of water prior to June 1, 1965. We reject Defendants' argument that the vesting of those water rights before the Constitution was adopted protected their water rights from forfeiture under the statute or from abandonment.

**{17}** Defendants provided no authority or argument in the district court to support their vesting theory, and the court determined that Defendants waived the argument. Defendants have argued the theory on appeal, but have provided no persuasive authority. Forfeiture existed before the Constitution was adopted, and it continued afterwards. *Hagerman Irrigation Co.*, 16 N.M. at 179-80, 113 P. at 824 (explaining that the statutory provision that "the failure to beneficially use all or any part of the water for which a right of use has vested, . . . for a period of four years, shall cause the reversion of such unused water" was "merely declaratory of the law as it had already been established"). Thus, statutory forfeiture follows from and is not inconsistent with prior appropriation doctrine. The forfeiture statutes were not applied retroactively in regard to Defendants' early acquired water rights. Rather, Defendants' nonuse that triggered forfeiture occurred after the forfeiture statutes were enacted. We see no basis on which to hold Defendants' early, pre-Constitution water rights immune from statutory forfeiture.

**b.      The Statutory Authority Issue**

**{18}** Defendants argue that the State Engineer lacked statutory authority to pursue forfeiture in the Lower Rio Grande for events occurring before 1981, when the Lower Rio Grande Basin was declared. They assert pursuant to NMSA 1978, Section 72-12-1 (1959) (amended 1998, 2001, and 2003), that the State Engineer had no authority to apply statutory forfeiture relating to events in years prior to 1981 because the State Engineer does not gain jurisdiction over groundwater until it declares an underground water basin. We reject this argument.

6

**{19}** The State Engineer argues that "[w]hether a basin has been declared is irrelevant to statutory forfeiture" because the declaration of a groundwater basin is relevant only to the State Engineer who must declare a groundwater basin in order to obtain jurisdiction over the administration of groundwater. Moreover, the State Engineer contends that because statutory forfeiture does not require action by the State Engineer, his jurisdiction over the groundwater has no bearing on the issue.

**{20}** Defendants' failure, in their brief in chief, to cite any on-point authority to support the argument that the forfeiture statute is in any way limited by Section 72-12-1, combined with their apparent concession of the issue by virtue of failing, in their reply brief, to respond to the State Engineer's argument, causes us to decline further review of this issue. *See Valdez v. Yates Petroleum Corp.*, 2007-NMCA-038, ¶ 24, 141 N.M. 381, 155 P.3d 786 (declining to consider an issue for which the appellant had failed to cite any "on-point" supporting authority); *Delta Automatic Sys., Inc. v. Bingham*, 1999-NMCA-029, ¶ 31, 126 N.M. 717, 974 P.2d 1174 (concluding that the appellant had conceded an argument that was raised in the appellee's answer brief but not addressed in the appellant's reply brief).

## 2.    The Amount of Land Issue

**{21}** Defendants contend that the district court erred in finding that the land in question consisted of less than fifty acres because the finding was not based on substantial evidence. Defendants fail to point out where, in the record, the finding they refer to was made. The State Engineer responds that the special master entered no finding of fact as to the full acreage of Defendants' land and that the amount of acreage was not relevant to the outcome of the case. We agree with the State Engineer. We see no need to address this point further. *See Bank of N.Y. v. Romero*, 2011-NMCA-110, ¶ 8, 150 N.M. 769, 266 P.3d 638 ("[W]here a party fails to cite any portion of the record to support its factual allegations, we need not consider its argument on appeal.").

## 3.    The Clear and Convincing Evidence Issues

**{22}** Defendants contend that the district court "erred in adopting findings which did not recite that the matters found were found by clear and convincing evidence." Defendants do not point to any particular findings, and they focus their argument on clear and convincing evidence of intent to abandon. Specifically, Defendants appear to contend that both the special master and the district court erred by failing to "establish, in writing, that the facts found in this case were found by 'clear and convincing evidence'."

**{23}** The special master concluded that "the proponent of the abandonment claim[] ha[d] the burden of proving abandonment by clear and convincing evidence." This conclusion indicates that the special master was aware of the proof standard. Defendants present nothing to indicate that the special master and the district court did not apply the correct standard to any finding of fact that required it; and without any indication to the contrary, we will not assume that the special master and the court failed to apply the "clear and

convincing" standard of proof when evaluating the evidence. "[A]n order or judgment by a district court adopting a special master's report will be upheld on appeal if the special master's findings are supported by substantial evidence." *Lozano v. GTE Lenkurt, Inc.*, 1996-NMCA-074, ¶ 15, 122 N.M. 103, 920 P.2d 1057. "[T]he district court must accept the special master's findings of fact unless they are clearly erroneous." *Id.* ¶ 16. We will presume that the district court has undertaken the requisite review of the special master's findings in the absence of evidence to the contrary. *Cf. Bannistor v. Ullman*, 287 F.3d 394, 399-400 (5th Cir. 2002) (stating that "a district court's statement that it conducted *de novo* review is presumptively valid, if not dispositive" and recognizing that the district court is presumed to have followed the law and to have abided by its statutorily commanded duty); *Esquibel v. Hallmark*, 92 N.M. 254, 256, 586 P.2d 1083, 1085 (1978) (stating that in reviewing a trial court's findings of fact for substantial evidence, the appellate courts "entertain all reasonable presumptions in favor of the correctness of the trial court's findings"); *Sanchez v. Saylor*, 2000-NMCA-099, ¶ 12, 129 N.M. 742, 13 P.3d 960 ("We indulge every presumption in favor of the correctness of the findings, conclusions, and judgment of the district court."); *State ex rel. Martinez v. Parker Townsend Ranch Co.*, 118 N.M. 787, 790, 887 P.2d 1254, 1257 (Ct. App. 1992) (stating that it is the obligation of this Court to "entertain all reasonable presumptions in favor of the correctness of the district court's findings, conclusions, and judgment"), *aff'd*, 118 N.M. 780, 887 P.2d 1247 (1994).

**{24}** Defendants also contend that the "court erred in concluding that the presumption of intent to abandon met the clear and convincing standard." In support of this contention, and in an ostensible effort to persuade this Court that they presented evidence sufficient to overcome the presumption of abandonment, Defendants offer a number of facts, none of which are supported by references to the record. In spite of the lack of this assertion's clarity, we will address the presumption and the evidence required to invoke it. A water rights owner can avoid the common law abandonment that arises after a protracted period of nonuse by establishing the absence of intent to abandon the water right. *See Reynolds*, 80 N.M. at 147, 148, 452 P.2d at 481, 482 (stating that "the element of intention is required in the doctrine of abandonment" and stating further that "[a]fter a long period of nonuse, the burden of proof shifts to the holder of the right to show the reasons for [the] nonuse" and to demonstrate the absence of intent to abandon).

**{25}** In regard to abandonment, the special master concluded that the State Engineer had

the burden of proving abandonment by clear and convincing evidence[;]

. . . . [that] [p]roof of a sustained period of [nonuse] of water triggers a presumption of intent to abandon a water right[;]

. . . . [that] Defendants [had] not argued that the abandonment presumption should not be applied in the circumstances of this case[;]

8

. . . [that the] presumption shifted the burden of going forward with the evidence to . . . [D]efendants . . . to rebut or meet the presumption[;]

. . . .

. . . [and] [D]efendants [failed to present] sufficient and credible evidence of their intent not to abandon.

Thus, the record reflects that the special master considered evidence presented by both parties and nevertheless determined that Defendants' presentation was insufficient to overcome the presumption of abandonment. To the extent that Defendants' partial reiteration, in their brief-in-chief, of the testimony and facts presented below constitutes an invitation to reweigh the evidence, we decline to do so. *See Bank of N.Y.*, 2011-NMCA-110, ¶ 7 ("[W]e will not reweigh the evidence nor substitute our judgment for that of the fact finder." (internal quotation marks and citation omitted)). We are in no way persuaded that the State Engineer failed by clear and convincing evidence to establish proof sufficient to invoke the presumption of intent to abandon. And we reject Defendants' contention that the court erred in concluding as much.

### 4. The Periodic and Merely Inconvenient Access Issue

**{26}** Defendants contend that the district court "erred in finding that periodic access by a single vehicle was evidence of sufficient legal and practical access which would have allowed [D]efendants to clear the ground, move in and out machinery sufficient for cultivation and the attendant application of waters to these lands." They argue that the facts did not support the court's finding and also that the facts did not "demonstrate that [they] had the legal right of access such that the failure to make the physical access practicable was their responsibility." Defendants contend that "[t]he ability of a single vehicle to traverse federal lands without detection does not constitute viable legal access." They argue further that the record demonstrates that it became impracticable after 1956 to continue to cross the Rio Grande to farm the land and that access was too difficult in that regard such that they were unable to find sharecroppers to farm the land, and that "[i]t soon became painfully obvious that it was futile to continue to seek access."

**{27}** Regarding their lack of viable access, Defendants specifically point to three of the court's findings. To the extent Defendants' discussion is an argument concerning lack of substantial evidence to support the findings, only two are at issue, namely:

> 10. No road of any type leads to the [p]roperty. Despite the absence of a road, the [p]roperty can be physically accessed from three directions. The [p]roperty can be accessed by vehicle from the south by driving approximately 1.3 miles north along the river bank from the Arroyo Cuervo diversion dam using a pathway created by previous vehicle traffic. The [p]roperty can also be accessed by vehicle from the north by departing

9

from an existing farm road and traveling approximately 1.4 miles south along the river bank using a pathway created by previous vehicle traffic. Finally, the [p]roperty can be accessed by crossing the river (by boat or, when the river is low, by vehicle or on foot).

> . . . .

> 12.    While the lack of a road renders physical access to the [p]roperty, inconvenient, access is not unusually difficult. Defendant Tomas Gonzalez testified that he generally visits the [p]roperty once or twice a year. When he does so, he either walks across the river or approaches the [p]roperty from the south by driving along the river[]bank in a four wheel drive vehicle. According to [Defendant] Gonzalez, use [of] a four wheel drive vehicle is necessary to traverse sandy patches and arroyos. Mr. John Verploegh, a [w]ater [r]ights [s]pecialist employed by the [s]tate, testified that use of a four wheel drive vehicle when driving along the western bank is unnecessary. According to Mr. Verploegh, vehicles can travel without engaging four wheel drive by driving on pathways created by other vehicles that previously traversed the same route over the years. [The court] find[s] Mr. Verploegh's testimony credible.

Defendants fail to show how these findings are unsupported by substantial evidence. Defendants rely principally on Defendant Tomas Gonzalez's testimony presented by Defendants to support access difficulty. In violation of Rule 12-213(A)(3) NMRA, Defendants fail to set out all of the evidence bearing on the issue. The record shows substantial evidence from which reasonable inferences can be drawn to support the court's findings, and we will not reweigh the evidence or substitute our judgment for that of the special master or the district court. *See Bank of N.Y.*, 2011-NMCA-110, ¶ 7 (stating that in reviewing substantial evidence claims, the question before this Court "is not whether substantial evidence exists to support the opposite result, but rather whether . . . the result reached" is supported by substantial evidence and further stating that this Court "will not reweigh the evidence nor substitute our judgment for that of the fact finder" (internal quotation marks and citations omitted)). We reject Defendants' arguments that amount to an attack on the court's findings as unsupported by the evidence.

**The Jury Demand Issue**

**{28}**    Defendants contend that the district court "erred in entering judgment without determining the issue of Defendants' demand for trial by a jury of twelve." We review this legal issue de novo. *Gutierrez v. Intel Corp.*, 2009-NMCA-106, ¶ 11, 147 N.M. 267, 219 P.3d 524. We disagree with Defendants' contention.

**{29}**    This was a sub-file water right forfeiture proceeding submitted by the district court to a special master, within a stream adjudication. A stream adjudication is a "special

10

statutory proceeding" commenced under NMSA 1978, Section 72-4-15 (1907). *State ex rel. State Eng'r v. Comm'r of Public Lands*, 2009-NMCA-004, ¶ 8, 145 N.M. 433, 200 P.3d 86.

> It was the purpose of the Constitution framers to retain the right to trial by jury as it heretofore existed in the Territory of New Mexico except in special proceedings unless express provision for jury trial was included therein.

*El Paso Elec. v. Real Estate Mart, Inc.*, 98 N.M. 490, 495, 650 P.2d 12, 17 (Ct. App. 1982). It was, therefore, a special proceeding that falls within the jury trial right exception. Defendants do not provide any authority to overcome the special statutory proceeding exception, nor do they provide any authority to support their argument, raised for the first time in their reply brief, that they are entitled to a jury trial because their property rights in and to water rights are common law rights. *See Leszinske v. Poole*, 110 N.M. 663, 666, 798 P.2d 1049, 1052 (Ct. App. 1990) ("[A]n issue raised for the first time in the reply brief will not be considered."); *see also In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (stating that an appellate court will not consider an issue if no authority is cited in support of the issue and will assume that no such authority exists). We therefore decline further consideration of Defendants' jury demand issue.

## CONCLUSION

**{30}** We affirm the district court's order adopting the special master's report and denying objections and the district court's judgment and sub-file order adopting the special master's report, each filed June 15, 2010.

**{31}    IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for *State of NM ex rel OSE v. Elephant Butte Irrigation Dist.*, No. 30,584**

**APPEAL AND ERROR**
Standard of Review

**CIVIL PROCEDURE**
Right to Trial by Jury

**CONSTITUTIONAL LAW**
New Mexico Constitution, General
Trial by Jury

**GOVERNMENT**
State Engineer

**NATURAL RESOURCES**
Irrigation
Water Law

**PROPERTY**
Abandonment