# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>January 10, 2017</u>

**NO. 33,852**

**KENNETH M. ROBEY**

   **Plaintiff-Appellee/Cross-Appellant,**

**v.**

**LLOYD G. PARNELL,**

   **Defendant-Appellant/Cross-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela Shepherd, District Judge**

Yntema Law Firm P.A.
Hessel E. Yntema, III
Albuquerque, NM

for Appellee/Cross Appellant

Lakins Law Firm, P.C.
Charles N. Lakins
Albuquerque, NM

for Appellant/Cross Appellee

**OPINION**

**HANISEE, Judge.**

{1}     The district court entered a judgment in favor of Plaintiff, Kenneth M. Robey, in his action for breach of contract against Defendant, Lloyd G. Parnell, after a bench trial. Defendant appeals, raising six issues. Plaintiff cross-appeals the district court's dismissal of his claims for unfair and unconscionable trade practices. We reject the arguments of both parties, except as to the district court's award of consequential damages to Plaintiff in the amount of $2,500. We reverse as to that amount of damages only and affirm the judgment in all other respects.

**BACKGROUND**

{2}     Plaintiff owns a farm in Lemitar, New Mexico. After nearly fifty years of use, the irrigation well on Plaintiff's property stopped producing water and he contacted Defendant about designing and constructing a replacement well. Defendant provided Plaintiff with two estimates: an initial written estimate and, after some discussion, a final written estimate. The latter estimate indicated the well would be 120 feet deep, and would include, among other things, an annular seal installed to protect the well from biofouling[1] and other contaminants. The replacement well was anticipated to

---

[1]The term "biofouling" is defined as "the gradual accumulation of waterborne organisms (as bacteria and protozoa) on the surfaces of engineering structures in water that contributes to corrosion of the structures and to a decrease in the efficiency

cost $37,876.64. Prior to construction, Plaintiff asked Defendant for a written contract, but Defendant told Plaintiff that "he didn't do business that way," and they could proceed based on the estimate, their verbal agreement, and a handshake. Plaintiff agreed. Plaintiff's understanding of the agreement, as told to him by Defendant, was that Defendant would construct a well that would be fully adequate for Plaintiff's irrigation purposes, that it would be capable of producing 2,500 to 3,000 gallons of water per minute, and that it would last at least as long as Plaintiff's prior well, approximately fifty years.

{3}     In September 2007 Defendant completed work on the well. The final invoice Defendant submitted to Plaintiff totaled $37,334.04. The invoice indicated the well was not 120 but 115 feet deep, and included an added item—a concrete pad— but did not include an annular seal. Defendant told Plaintiff that the shallower depth would "not make any difference[,]" and that the concrete pad was required by the state and would serve the function of an annular seal, which was unnecessary. The absence of an annular seal was contrary to Defendant's verbal representation regarding the well Plaintiff understood would be constructed.

of moving parts." Merriam–Webster Dictionary, http://www.merriam-webster.com /dictionary/biofouling (last visited on Nov. 11, 2016).

{4} Plaintiff was initially satisfied with the well, but by March 2011, three-and-a-half years after its completion, the well failed to produce anything but a surge of sediment-filled water before it began sucking air. Plaintiff contacted Defendant about the well's failure and Defendant recommended the well be cleaned out. But in order for the well to be cleaned out, the concrete pad first had to be removed. Plaintiff again discussed the annular seal with Defendant, who told Plaintiff that an annular seal was not required when Plaintiff's well was constructed but that he could add one, although it really was not necessary. Following the well's clean-out, its performance did not improve.

{5} After some further unproductive communications with Defendant, Plaintiff filed suit in August 2011. At the bench trial, Plaintiff testified that instead of being 120 feet deep as described in the estimate, or 115 feet deep as described in the invoice, the well was less than 105 feet deep. Additionally, Plaintiff testified that he discovered that the concrete pad was not required by the state, and that it was his belief that the pad was actually used to conceal the fact that an annular seal had not been installed as promised. Plaintiff's expert testified to numerous issues with the well, including Defendant's failure to install the annular seal described in the estimate, a component Plaintiff's expert explained was required by state regulation. Plaintiff's expert further testified that the well was not constructed to a workmanlike

3

standard, and ultimately concluded that the failure of the well was caused by a number of factors, including Defendant's negligent design and construction and biofouling attributable to Defendant's failure to install the annular seal or sanitize his tools and materials. Defendant's expert disputed the cause of the biofouling and the failure of the well. In Defendant's expert's view, the biofouling of the well was caused by naturally occurring bacteria, and could have been prevented through routine maintenance, which was the responsibility of the well owner.

{6}     After a three-day bench trial, the district court entered its findings of fact and conclusions of law. Crediting Plaintiff's testimony, the district court found that Defendant told Plaintiff the new well would last at least as long as the old one, or for about fifty years, and concluded that, as a matter of law, this statement amounted to an express warranty. The district court further concluded, based on the Plaintiff's expert's testimony, that Defendant failed to design and construct the well in a workmanlike manner with the ordinary skill of those who undertake such work. Additionally, based on the estimate provided by Defendant, Plaintiff's testimony, and Plaintiff's expert's testimony, the district court concluded Defendant failed to perform all contracted-for obligations and breached his contract with the Plaintiff. The district court also found that Defendant negligently made numerous false or misleading material representations to Plaintiff regarding the well's specifications and

4

capabilities and the state's requirements for the well, and determined that Defendant negligently represented, by omission, "reductions in quantity and changes in quality of the materials provided," as compared to what was originally specified in the estimate.

{7} The district court entered judgment for Defendant on Plaintiff's claims for unfair and unconscionable trade practices, finding that Plaintiff failed to demonstrate that Defendant knowingly made false or misleading statements and that Defendant's acts and practices constituted an unconscionable trade practice. The district court also denied Defendant's request for attorney fees, determining that Plaintiff's unfair trade practices claim was not groundless. The district court concluded that Plaintiff was entitled to compensatory damages in the amount of $37,334.04, the total amount Plaintiff paid to Defendant for design and construction of the well, and consequential damages in the amount of $14,997.74.

{8} Defendant appeals the district court's judgment, raising the following issues: (1) The district court erred in finding that an express warranty was created, (2) The district court erred in finding Defendant breached the contract based upon differences in the estimate and the well as built, (3) The district court erred in finding Defendant to be in breach of contract for failure to design and construct the well in a workmanlike manner with the ordinary skill of those who undertake such work, (4)

5

The district court erred in determining Plaintiff was entitled to consequential damages based on negligent misrepresentation, (5) The district court erred in awarding consequential damages, and (6) The district court erred in finding that Plaintiff's unfair trade practices claim was not groundless.

{9} Plaintiff cross-appeals, raising the following claims of error: (1) The district court erred in denying Plaintiff's claim for unfair trade practices; and (2) The district court erred in denying Plaintiff's claim for unconscionable trade practices.

**DISCUSSION**

**Standard of Review**

{10} Plaintiff and Defendant disagree as to the appropriate standard of review for the district court's findings of fact. Yet, this Court has definitively stated the standard that "the judgment of the trial court will not be disturbed on appeal if the findings of fact entered by the court are supported by substantial evidence, are not clearly erroneous, and are sufficient to support the judgment." *Bank of New York v. Romero*, 2011-NMCA-110, ¶ 7, 150 N.M. 769, 266 P.3d 638, *rev'd on other grounds*, 2014-NMSC-007, 320 P.3d 1. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Landavazo v. Sanchez*, 1990-NMSC-114, ¶ 7, 111 N.M. 137, 802 P.2d 1283. In reviewing a claim of insufficient evidence, we resolve "all disputes of facts in favor of the successful

6

party and indulge[] all reasonable inferences in support of the prevailing party." *Las Cruces Prof'l Fire Fighters & Int'l Ass'n of Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. "Findings of fact may properly be given a liberal interpretation if the interpretation is supported by the evidence." *Herrera v. Roman Catholic Church*, 1991-NMCA-089, ¶ 14, 112 N.M. 717, 819 P.2d 264. Lastly, this court "will not reweigh the evidence nor substitute our judgment for that of the fact[-]finder." *Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12.

{11}    Regarding the parties' challenges to the district court's conclusions of law, we apply de novo review. *See Gallegos v. State Bd. of Educ.*, 1997-NMCA-040, ¶ 11, 123 N.M. 362, 940 P.2d 468.

**Defendant's Claims of Error**

**1.    The District Court Did Not Err in Finding an Express Warranty**

{12}    Defendant first challenges the district court's conclusion that Defendant's statements to Plaintiff created an express warranty and that Defendant breached his contract with Plaintiff when the well failed to meet that warranty. Specifically, Defendant states the district court's conclusion that an express warranty was given is "contrary to well[-]established New Mexico law" and "unsupported by substantial evidence." We disagree.

{13}     Our Uniform Commercial Code states that "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise[.]" NMSA 1978, § 55-2-313(1)(a) (1961). Further, "[i]t is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty[.]" Section 55-2-313(2). Finally, "[a]ll of the circumstances of a sale are to be considered when determining whether there was an express warranty or a mere expression of opinion." *Lovington Cattle Feeders, Inc. v. Abbott Laboratories*, 1982-NMSC-027, ¶ 11, 97 N.M. 564, 642 P.2d 167.

{14}     As grounds for his claim that no express warranty existed, Defendant presents three arguments. First, Defendant states that "in a contract for drilling a water well, there is no implied undertaking that water will be obtained or that the well will be a success as to the quantity or quality of the water obtained[.]" *Davis v. Merrick*, 1959-NMSC-084, ¶ 6, 66 N.M. 226, 345 P.2d 1042. While it is true that New Mexico law imposes no implied warranty in a contract for the drilling of a producing well, *see id.*, that does not mean that Defendant's statement to Plaintiff did not constitute an express warranty under our law. *See Perfetti v. McGhan Med.*, 1983-NMCA-032, ¶ 24, 99 N.M. 645, 662 P.2d 646 (setting forth the elements of an express warranty).

8

There is substantial evidence in the record to support the finding that Defendant told Plaintiff that the well would last fifty years, and thus supports the district court's determination that Defendant made the sort of affirmation that, in these circumstances, amounts to an express warranty.

{15}     To support his second proposition that it is not customary business practice for well drillers to provide express warranties, Defendant cites UJI 13-826 NMRA, which states that "[a] custom in the trade is any manner of dealing that is commonly followed in a place or trade so as to create a reasonable expectation that it will be followed with respect to the transaction between the parties." *Id.* However, that instruction explicitly states that it should be used in conjunction with UJI 13-825 NMRA, which deals with ambiguity of the terms of the contract. *See* UJI 13-826. Use Note. There is no claim of ambiguity here. It appears Defendant is attempting to argue that because the custom in well drilling is not to make express warranties, none were made here. But again, substantial evidence supports the district court's finding that Defendant did indeed tell Plaintiff that the well would last fifty years, which in turn supports the district court's conclusions of express warranty and breach. "A custom or usage which is repugnant to the terms of an express contract is not permitted to operate against it, and evidence of it is inadmissible; for while usage may be admissible to explain what is doubtful, it is never admissible to contradict what is

9

plain." *Gooch v. Coleman*, 1916-NMSC-057, ¶ 12, 22 N.M. 45, 159 P. 945 (internal quotation marks and citation omitted). Here, Defendant attempts to use evidence of custom to negate any warranty; however, Defendant's representation to Plaintiff created a clearly stated express warranty, which evidence of custom cannot defeat.

{16}    Third, Defendant contends that the statute of frauds applies to this case and thus any warranty must have been in writing to be enforceable. But this argument is made for the first time on appeal and was not presented to the district court for the proposition now asserted. While Defendant did raise the absence of a written warranty below, he did so to point out Plaintiff's lack of documentary evidence for the warranty and did not argue such evidence was required. Now on appeal, Defendant argues that any warranty must have been in writing in order to satisfy the statute of frauds. *See* NMSA 1978, § 55-2A-201 (1992). In order "[t]o preserve an issue for review on appeal, it must appear that an appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717. We find nothing in the record to show, and Defendant points to no place in the record to demonstrate, that Defendant sought a ruling from district court on the basis that the express warranty issue failed on statute of frauds grounds, and thus hold that this argument was not properly preserved. *See Crutchfield v. Dep't of Taxation & Revenue*,

10

2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 (holding that "on appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue.").

{17} Even so, Defendant's argument fails on the merits. Our Supreme Court, in *Salazar v. D.W.B.H., Inc.*, 2008-NMSC-054, ¶ 8, 144 N.M. 828, 192 P.3d 1205, stated, "[c]ommon to all . . . types of express warranty is the requirement that an express warranty must be made as part of the basis of the bargain. This does not mean, however, that an express warranty must be specifically bargained for or even included as part of a written contract." It is clear that our caselaw and the governing statute, Section 55-2-313, do not require express warranties to be in writing, however, there is substantial evidence to show that the representations made to Plaintiff by Defendant do meet the requirements of an express warranty.

{18} "It is fundamental that a judgment cannot be sustained on appeal unless the conclusion upon which it rests finds support in one or more findings of fact." *Thompson v. H.B. Zachry Co.*, 1966-NMSC-017, ¶ 3, 75 N.M. 715, 410 P.2d 740. Here, the district court's conclusion does find support in its finding that Defendant told Plaintiff the well would last fifty years, a finding which is in turn supported by substantial evidence. Therefore, because the district court's conclusion is factually

11

supported, and because evidence of custom does not apply when the meaning of the agreement is plain, and because our law does not require express warranties to be in writing, we find no error in the district court's conclusions that Defendant created an express warranty by his representations to Plaintiff, and breached that warranty when the well failed to last as expected.

**2.      The District Court Did Not Err When it Found Defendant to Have Breached the Contract Based Upon Differences Between the Estimate and the Well Defendant Constructed**

{19}    Defendant contends that his failure to install all the features of the well as described in the estimate does not amount to a breach of contract. We disagree.

{20}    As grounds for his appeal, Defendant disputes a number of the district court's findings. On review of the record, we conclude that these findings are supported by substantial evidence. Expert testimony, Defendant's own testimony, Defendant's second estimate, and Defendant's invoice all support the district court's findings. Specifically, the evidence demonstrated that the well was shallower than was agreed to, constructed differently than was agreed to, and that it failed after approximately three-and-a-half years, considerably sooner than Defendant assured Plaintiff it would. In regard to these findings, "[i]t is not error for a trial court to credit one expert's testimony over another's." *Sunnyland Farms, Inc. v. Cent. N.M. Elec. Coop., Inc.*, 2013-NMSC-017, ¶ 39, 301 P.3d 387. "When the trial court's findings of fact are

supported by substantial evidence . . . refusal to make contrary findings is not error." *Griffin v. Guadalupe Med. Ctr., Inc.*, 1997-NMCA-012, ¶ 22, 123 N.M. 60, 933 P.2d 859.

{21} Defendant also disputes the district court's conclusion that "Defendant failed to perform all contracted-for obligations to the expected workmanlike standard and with the ordinary skill of those who undertake such work." Defendant argues that the estimate, the basis for determining the "contracted-for obligations," does not constitute an agreement between the parties that the well would be constructed according to those exact specifications. Defendant states that he was "not bound to build the well to the exact specifications set forth in the [e]stimate." For three reasons, we reject Defendant's argument.

{22} First, Defendant does not challenge the district court's finding that the parties "entered into a contract based on Defendant's second estimate and oral statements[,]" nor does Defendant challenge the finding that both parties agreed to proceed without further written agreement based on the estimate. "An unchallenged finding of the trial court is binding on appeal." *Seipert v. Johnson*, 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298.

{23} Second, Defendant argues that Plaintiff was "fully cognizant of what the differences between an '[e]stimate,' an '[i]nvoice' and a '[c]ontract' are in the normal

13

course of business practices," but points to nothing in the record to support this assertion. As we have stated previously, "[t]his court will not search the record to find evidence to support" a party's claim. *In re Estate of Heeter*, 1992-NMCA-032, ¶ 15, 113 N.M. 691, 831 P.2d 990. It appears that by stating Plaintiff knew the differences between an estimate and a contract, Defendant attempts to argue that Plaintiff had reason to know that the well's final specifications would differ from the estimate. However, the evidence shows that Plaintiff's understanding of the agreement between the parties was that Defendant would construct the well based on the specifications in the estimate, since Defendant refused to provide Plaintiff with a written contract when asked to do so, leading to the parties' agreement to proceed based on the written estimate.

{24}     Third, Defendant states that he reviewed the estimate with Plaintiff, and that Plaintiff understood there were items in it that might or might not appear on the final invoice. However, examination of the testimony demonstrates that this discussion was limited to the fact that the amounts billed on the final invoice might deviate from the estimate, not that the specifications of the well would be different.

{25}     "When a party is challenging a legal conclusion, the standard for review is whether the law correctly was applied to the facts, viewing them in a manner most favorable to the prevailing party[.]" *Golden Cone Concepts, Inc. v. Villa Linda Mall,*

14

*Ltd.*, 1991-NMSC-097, ¶ 8, 113 N.M. 9, 820 P.2d 1323. Because the oral contract between the parties was based on the specifications found in the estimate, we conclude that the district court correctly applied the law to the facts of this case in its conclusion that Defendant breached his contract with Plaintiff when he failed to build the well to the specifications described by the estimate.

**3. The District Court Did Not Err When it Found Defendant to Have Breached the Contract By Failing to Design and Construct the Well in a Workmanlike Manner With the Ordinary Skill of Those Who Undertake Such Work**

{26} Defendant next contends that the district court erred in determining that he failed to construct the well in a workmanlike manner. As grounds for his claim, Defendant challenges many of the same findings of fact he challenged for his claim that the district court erred when it found him in breach of contract. We do not reconsider factual findings we have previously determined are supported by substantial evidence, but do examine the additional disputed findings and the district court's conclusion of law regarding the manner and skill with which the well was constructed by Defendant.

{27} Defendant challenges the finding that the well "substantially failed [in] March[] 2011." However, there is substantial evidence in the record to support the finding that the well had indeed failed by March 2011. Plaintiff testified that as of that date, the well ceased to produce anything more than a sandy surge of water. "[W]e review the

evidence in the light most favorable to support the trial court's findings, resolving all conflicts and indulging all permissible inferences in favor of the decision below." *Jones v. Schoellkopf*, 2005-NMCA-124, ¶ 8, 138 N.M. 477, 122 P.3d 844. In reviewing the evidence according to this standard, we conclude that the district court had a sufficient basis for its finding that the well had substantially failed. Plaintiff's testimony, credited by the district court, alone is sufficient to establish a basis for the district court's conclusion that the well failed in March 2011.

{28}    Defendant next disputes the trial court's finding that the well's ultimate failure was caused by "Defendant's inadequate design and construction of the well." To support his argument, Defendant states that the causes of failure assigned by the district court are "contrary to the fact that the well was producing according to its design for nearly four years" and are "based upon speculation and conjecture . . . not supported by substantial evidence." We disagree. The finding was not based upon speculation or conjecture, but rather on evidence that included expert testimony. The record is replete with testimony that, in several respects, Defendant failed to meet workmanlike standards and customary practices. For example, Defendant, among other things, failed to install an end cap as customarily used in well drilling, failed to use the proper size of gravel, failed to adhere to state engineer standards, and failed to construct the well in such a way as to keep certain biofouling materials out. This

16

evidence was substantial in demonstrating that the failure of the well was caused by Defendant's failure to construct the well to a workmanlike standard, and was cited by the district court to support its finding that Defendant did not design and construct the well to a workmanlike standard. We will "not disturb such findings, weigh the evidence, resolve conflicts or pass on the credibility of witnesses where the evidence substantially supports the findings made by the trial court." *Baker v. Benedict*, 1978-NMSC-087, ¶ 17, 92 N.M. 283, 587 P.2d 430.

{29} Defendant also challenges the district court's conclusion that he failed to design and construct the well in a workmanlike standard with the ordinary skill of those who undertake such work. "Unlike express warranties, implied warranties are not bargained for; they are imposed by law." *Salazar*, 2008-NMSC-054, ¶ 14. The implied warranty in a contract for drilling a water well is that "the work shall be done in a workmanlike manner with the ordinary skill of those who undertake such work." *Davis*, 1959-NMSC-084, ¶ 6. Defendant asserts that he constructed the well according to his experience and common practices and that "[n]one of [the] differences between the [e]stimate and the [i]nvoice demonstrates the well was not constructed in a workmanlike manner with the ordinary skill of those who undertake such work." However, as discussed above, the record is replete with evidence demonstrating that Defendant's construction and design of the well was not

17

completed in a workmanlike manner. Expert testimony concluded the well was not designed or constructed to this standard. Nor was the well constructed with the ordinary skill of those who undertake such work, given, for example, that Defendant varied his work from applicable state regulations and used materials that were incompatible with workmanlike construction.

{30} "[I]t is not the function of an appellate court on review to weigh the testimony and evidence presented below, but rather to ascertain whether there is substantial evidence to support the trial court's findings of fact and conclusions." *Newcum v. Lawson*, 1984-NMCA-057, ¶ 30, 101 N.M. 448, 684 P.2d 534. Here, there is substantial evidence to support the challenged findings of fact which in turn support the challenged conclusions of law. Therefore, we find no error in the district court's conclusion that Defendant failed to design and construct the well in a workmanlike standard with the ordinary skill of those who undertake such work.

**4.     Any Error by the District Court in Using Negligent Misrepresentation as a Basis For Its Award of Consequential Damages Was Harmless**

{31}     Defendant next argues that the district court did not have a sufficient basis to award damages based upon negligent misrepresentation. Specifically, Defendant asserts that "the [district c]ourt expressly found [Plaintiff] failed to establish two of the four requisite elements of a negligent misrepresentation claim" and thus there was no basis to award damages for negligent misrepresentation. To recover under a theory

18

of negligent misrepresentation, a plaintiff must show that: (1) the defendant made a material representation to plaintiff, (2) the plaintiff relied upon the representation, (3) the defendant knew the representation was false or made it recklessly, and (4) the defendant intended to induce reliance by the plaintiff. *Saylor v. Valles*, 2003-NMCA-037, ¶ 17, 133 N.M. 432, 63 P.3d 1152. Here, the district court found that Plaintiff failed to establish that Defendant's misrepresentations were made recklessly or with knowledge they were false, and that they were made with the intent to deceive Plaintiff. Defendant argues that because the district court explicitly found against Plaintiff on two necessary elements of negligent misrepresentation, negligent misrepresentation should not have been a basis for Plaintiff's recovery. While we agree with Defendant that Plaintiff's claim for negligent misrepresentation fails for lack of necessary elements, on appeal the aggrieved party "[has] the burden of demonstrating that [it was] prejudiced by the claimed error." *Scott v. Brown*, 1966-NMSC-135, ¶ 20, 76 N.M. 501, 416 P.2d 516. Defendant makes no claim that he was prejudiced by the inclusion of negligent misrepresentation as a basis for recovery and thus has not met his burden.

{32} Even allowing that the district court erroneously included negligent misrepresentation as a basis for Plaintiff's recovery, we find no prejudice in the error. Under well-established law, "[a]n appellate court does not correct harmless error." *Id*.

While it is well-accepted that "[d]uplication of damages or double recovery for injuries received is not permissible," *Hood v. Fulkerson*, 1985-NMSC-048, ¶ 12, 102 N.M. 677, 699 P.2d 608, there is no claim of duplicative damages in this case. Negligent misrepresentation was simply one of two alternative theories the district court determined justified awarding Plaintiff consequential damages in the amount of $14,997.74. "Where there are different theories of recovery and liability is found on each, but the relief requested [is] the same, namely compensatory damages, the injured party is entitled to only one compensatory damage award." *Id*. Here, there is no argument, nor evidence in the record, that Plaintiff received more than one compensatory damage award, and Defendant does not argue that the district court was unjustified in awarding consequential damages based on the breach of contract aside from the arguments we have already rejected above. Accordingly, we conclude that the district court appropriately awarded consequential damages, and given the lack of prejudice to Defendant, conclude also that its error regarding the inclusion of negligent misrepresentation as a basis for recovery was harmless.

**5. The District Court Erred in Awarding $2,500 in Consequential Damages for an Estimated Future Expense, but Did Not Err in Other Aspects of Its Award of Consequential Damages**

{33} Defendant next challenges the district court's finding "concerning compensatory damages" and asks this Court to overturn the award of "compensatory

20

damages." However, it appears from the remainder of Defendant's argument that his intent is to challenge the district court's award of consequential damages to Plaintiff in the amount of $14,997.74. Specifically, Defendant contends that (1) there is not substantial evidence to support the district court's awarding of consequential damages, (2) absent a showing of "special circumstances" there can be no award of consequential damages, and (3) the district court's failure to make an explicit finding that the damages were objectively foreseeable is grounds for reversal. We address each argument in turn.

{34}     First, Defendant argues that the consequential damages are not supported by substantial evidence. In particular, Defendant contends that the $2,500 estimated cost of plugging the well was not supported by any evidence other than Plaintiff's testimony and is "wholly speculative." As we explain below, our review of the record indicates that Defendant is correct in this regard.

{35}     "[W]hen it is possible to present accurate evidence on the amount of damages, the party upon whom the burden rests to prove damages must present such evidence." *First Nat'l Bank in Albuquerque v. Sanchez*, 1991-NMSC-065, ¶ 18, 112 N.M. 317, 815 P.2d 613. We have not allowed damages to stand when they are speculative or based on "no more than mere estimates." *Id.* In this case, Plaintiff's future cost of having to plug Defendant's well was based only on an estimate that Plaintiff

developed himself and had not yet paid. Therefore, we agree with Defendant that the district court's award of $2,500 for the estimated future cost of plugging the well was unsupported by substantial evidence and thus it was error for the district court to award these damages.

{36}    As to the additional consequential damages, Defendant challenges that these too are unsupported by substantial evidence. We disagree. There is evidence in the record, including Plaintiff's testimony and admitted exhibits, to support the district court's finding that Plaintiff did suffer the remaining consequential damages. These included the cost of filing the application for the well, the cost of publishing the required legal notice for the application for the well, the fees paid for the well clean-out, the fees paid for well evaluation reports, and the fee paid for a video survey of the well to determine the cause of the well's problems. Because each of these damages is supported by testimony and admitted exhibits, including receipts and invoices, we leave these awards intact and undisturbed.

{37}    Second, Defendant argues that absent a showing of "special circumstances," there can be no award of consequential damages. As support for this proposition, Defendant cites *Sunnyland Farms, Inc.* in which our Supreme Court stated that it "would expect the trial court to find special circumstances, beyond the ordinary course of events" to support a finding that the plaintiff's damages were foreseeable

to defendant. 2013-NMSC-017, ¶ 17 (internal quotation marks and citation omitted). In *Sunnyland Farms*, the plaintiff sued its electric provider, alleging that it suffered consequential damages from a fire at its facility as the result of the defendant's wrongful termination of service. *Id.* ¶ 1. When a fire broke out at the plaintiff's facility, employees and firefighters were unable to extinguish the fire since its fire suppression systems were powered by electricity. *Id.* The plaintiff argued that but for the defendant's conduct, the facility could have been saved. *Id.* The district court found that the defendant was liable to the plaintiff for consequential damages that resulted from the fire. *Id.* ¶ 7. Our Supreme Court reversed the award of consequential damages, holding that the cause of the fire was so attenuated from the water shut off that, absent special circumstances demonstrating the defendant knew of the plaintiff's particular vulnerability to fire or its dependence on electricity for fire suppression, there could be no finding that the plaintiff's damages were foreseeable to the defendant. *Id.* ¶ 24.

{38}     Defendant would have us read *Sunnyland Farms* as requiring special circumstances in all cases with consequential damages. We decline to extend *Sunnyland Farms* to the degree requested. Here, the consequential damages awarded to Plaintiff for Defendant's conduct are much less attenuated than those awarded and reversed in *Sunnyland Farms* and thus there is no need for a finding of special

23

circumstances. In *Sunnyland Farms*, the court stated that "[i]n a contract action, a defendant is liable only for those consequential damages that were objectively foreseeable as a probable result of his or her breach when the contract was made." *Id.* ¶ 16. The court looked for special circumstances in that case only because the resulting damages were so far removed from the defendant's actions that, absent special circumstances, the defendant could not have been expected to anticipate them. *Id.* ¶¶ 21, 24.

{39} In this case, the following consequential damages were awarded: the cost of filing the application for the well, the cost of publishing a legal notice for the well application, the costs of the well clean out, and the costs of the engineer's evaluation of the well. All of these fall within the "ordinary course of events," that could foreseeably flow from Defendant's breach, thus relieving Plaintiff of the need to prove "special circumstances." *Id*. ¶ 17 (internal quotation marks and citation omitted).

{40} For his final argument on this issue, Defendant contends that the district court's failure to make an explicit finding that the damages were objectively foreseeable is grounds for reversal. Notably, Defendant does not appear to argue that Plaintiff's consequential damages were in fact not foreseeable, rather that the district court's alleged error in failing to make an explicit finding that such damages were

24

foreseeable precludes Plaintiff from recovery. However, Defendant cites no case law to support his assertion that such an explicit finding is required. It is well established that this Court will not consider propositions that are unsupported by citation to authority. *See ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969.

{41}     Although we decline to address whether our law requires an explicit finding of objective foreseeability, because the underlying issue is whether the district court's conclusion of law that Plaintiff is entitled to consequential damages is supported by its findings, we do address that question here. The district court found that Plaintiff "suffered additional recoverable consequential damages, beyond the amounts paid directly to Defendant." As discussed above, that finding was supported by substantial evidence, with the exception of damages in the amount of $2,500 for the future cost of filling the well. While "[i]t is basic that a judgment cannot be sustained on appeal unless the conclusion upon which it rests finds support in the findings of fact," *Galvan v. Miller*, 1968-NMSC-139, ¶ 7, 79 N.M. 540, 445 P.2d 961, "findings are sufficient if a fair construction of all of them, taken together, justif[ies] the trial court's judgment." *H.T. Coker Constr. Co. v. Whitfield Transp., Inc.*, 1974-NMCA-002, ¶ 9, 85 N.M. 802, 518 P.2d 782. Here, the district court's conclusion rested on its findings of fact, and considering those findings collectively

we can reasonably infer that implicit in the district court's finding that Plaintiff suffered consequential damages is that those consequential damages were indeed foreseeable. "If, from the facts found, the other necessary facts may be reasonably inferred, the judgment will not be disturbed." *Herrera*, 1991-NMCA-089, ¶ 14.

{42}    We conclude that the district court's findings of consequential damages are supported by substantial evidence, with the one exception of the $2,500 in damages for the future cost of plugging the well. We are not persuaded by Defendant's arguments that consequential damages must be supported by a finding of special circumstances and here required an explicit finding of objective foreseeability. Consequently, we reverse the district court's award of consequential damages in the amount of $2,500, but leave the remainder of its consequential damages award intact.

**6.      The District Court Did Not Err in Determining That Plaintiff's Unfair Trade Practices Act (UPA) Claim Was Not Groundless and in Denying Defendant an Award of Attorney Fees**

{43}    For his final claim of error, Defendant challenges the district court's "Conclusion No. 70" that Plaintiff's UPA claim was not groundless and that

26

Defendant was not entitled to attorney fees.[2] We reject Defendant's arguments as to these issues.

{44}    Under the UPA, a party who prevails against a UPA claim is entitled to recover attorney fees if the court finds that the opposing party brought a groundless claim. NMSA 1978, § 57-12-10(C) (2005). "In interpreting Section 57-12-10(C), however, we do not read the statute to authorize an award of attorney[] fees to [the d]efendants merely because they successfully prevailed against the claims asserted by [the p]laintiff." *G.E.W. Mech. Contractors, Inc. v. Johnston Co.*, 1993-NMCA-081, ¶ 23, 115 N.M. 727, 858 P.2d 103. A claim is considered groundless, which we have held is synonymous with frivolous, *id.* ¶ 24, when "there is no arguable basis in law or fact to support the cause of action and the claim is not supported by a good-faith argument for the extension, modification, or reversal of existing law." *Id.* ¶ 23.

{45}    Defendant's only basis for this challenge is that Plaintiff did not "make a good faith argument for the extension, modification or reversal of well-established existing law . . . ," *see Davis*, 1959-NMSC-084, ¶ 6, that a well driller cannot warrant the performance or longevity of a well. Defendant mischaracterizes the text of *Davis*,

[2]Given the rest of Defendant's argument and that there is no "Conclusion No. 70," we assume that Defendant's intent is to challenge the district court's finding that Plaintiff's UPA claim was not groundless, along with its conclusion that Defendant was not entitled to attorney fees.

however. We have already noted that while Davis does not impose an implied warranty in a contract for the drilling of a producing well, there is nothing in *Davis* to support Defendant's contention that a well-driller cannot offer an express warranty. Plaintiff never claimed an implied warranty, but rather that Defendant told him the well would last fifty years. The district court concluded that this statement created an express warranty between the parties. Thus, Plaintiff had no obligation to make an argument for the extension, modification, or reversal of established law because the law cited by Defendant had no application to this case. Because Defendant offers no argument other than his conclusory assertion that Plaintiff failed to make a proper argument, we hold that the district court did not err in finding Plaintiff's claim was not groundless.

{46} Defendant further challenges the district court's conclusion that he is not entitled to attorney fees. Our Supreme Court has stated numerous times in this regard that "[c]onclusions of law must be supported by findings of ultimate fact." *Torres v. Plastech Corp.*, 1997-NMSC-053, ¶ 13, 124 N.M. 197, 947 P.2d 154. Here, the district court's finding that Plaintiff's claim was not groundless provides sufficient support for its conclusion. For Defendant to prevail on his claim for attorney fees, "it is not enough to show that [the p]laintiff did not prevail on such claims. The party must also establish that, at the time such claim was filed, the claim was initiated in

28

bad faith or there was no credible evidence to support it." *Jones v. Beavers*, 1993-NMCA-100, ¶ 23, 116 N.M. 634, 866 P.2d 362. Other than his conclusory assertion that Plaintiff failed to make an argument for the extension, modification, or reversal of existing law, Defendant makes no argument that Plaintiff initiated his claim in bad faith or without evidentiary support. "It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence[.]" *Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 (internal quotation marks and citation omitted).We therefore conclude that the district court did not err in finding that Defendant is not entitled to attorney fees.

**Plaintiff's Claims of Error**

**7.      The District Court Did Not Err in Denying Plaintiff's Claim for Unfair Trade Practices**

{47}      In his cross-appeal, Plaintiff first argues that the district court erred in denying his claim for unfair trade practices. As grounds for this appeal, Plaintiff challenges several of the district court's findings of fact and its conclusion that "Plaintiff did not demonstrate Defendant engaged in any unfair or deceptive [trade] practice that violated New Mexico's Unfair [Trade] Practices Act." Plaintiff argues that the remaining findings of fact demonstrate that Plaintiff in fact did satisfy the elements of a UPA claim, and thus the district court erred in denying his claim.

29

Under the UPA, an unfair trade practice is:

> a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person.

NMSA 1978, § 57-12-2(D) (2009). We agree with Plaintiff that the first element, that Defendant made false or misleading representations, is supported by the district court's unchallenged findings. We disagree, however, with Plaintiff's assertion that the false or misleading representations were knowingly made. Because the second element required for a claim under the UPA is not satisfied, we decline to address the third element.

{48} Plaintiff argues that the district court's findings of multiple negligent misrepresentations "must" lead to the conclusion that those representations were knowingly made. We disagree. Our Supreme Court has said that a "knowingly made" statement is made when the "party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." *Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶ 17, 112 N.M. 97, 811 P.2d 1308 (internal quotation marks omitted). Under our case law, " 'knowingly made' is an integral part of all UPA claims and . . . must be the subject of actual proof." *Atherton v. Gopin*,

30

2015-NMCA-003, ¶ 47, 340 P.3d 630. A negligent misrepresentation is made when a party fails to exercise reasonable care or competence in communicating information. *W. States Mech. Contractors, Inc. v. Sandia Corp.*, 1990-NMCA-094, ¶ 15, 110 N.M. 676, 798 P.2d 1062. Plaintiff argues that the reasonableness standard is implicated in both negligently made and knowingly made misrepresentations, and thus the " 'knowingly' requirement should be established when representations are made negligently about material facts that are within the expected knowledge of [D]efendant." We are not persuaded. If we adopt Plaintiff's view of the UPA, a negligent representation would always be knowingly made and there would be no distinction between the two standards.

{49} Plaintiff's assertion regarding his conclusion that negligently made representations are ipso facto knowingly made appears to be based on his theory that knowingly is a lesser standard than that of negligence. To support his argument, Plaintiff cites *Cotter v. Novak*, 1953-NMSC-093, 57 N.M. 639, 261 P.2d 827. In *Cotter*, the plaintiff, a young child, was injured when another child discharged a nail into the child's eye using a dart gun. *Id.* ¶ 1. The plaintiff brought suit against the property owner, alleging that by "knowingly permitt[ing]" cans of nails to remain on the premises, the defendant had acted negligently. *Id.* Our Supreme Court held that because there was nothing inherently dangerous about nails, and because a reasonable

31

person could not foresee an injury resulting from the nails being left on the premises, the plaintiff failed to state a claim for which relief could be granted. *Id.* ¶¶ 7, 9. Unlike Plaintiff, we see nothing within our Supreme Court's ruling that leads us to conclude knowingly and negligently are now to be interchangeably used terms or elements, and certainly nothing to indicate that which is negligently or improperly constructed was therefore knowingly so.

{50}    Plaintiff furthers argues that Defendant "certainly had knowledge of such circumstances that would ordinarily lead to knowledge of the actual facts concerning his various statements." However, in findings not disputed by Plaintiff, the district court found that Defendant failed to keep sufficient records about the well and the work performed constructing it, and could not state with any certainty what work was performed on the well. This would seem to contradict the idea that Defendant "knowingly" made representations to Plaintiff because at the time they were made, Defendant did not have knowledge one way or another regarding their truth or falsity.

{51}    Finally, we believe that if the Legislature intended to allow claims under the UPA to proceed under a negligence standard, it would have indicated as much in the language of the UPA. "In interpreting statutes, [the appellate courts] seek to give effect to the Legislature's intent, and in determining intent we look to the language used[.]" *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 13, 121 N.M. 764, 918

32

P.2d 350. Because the language used by the UPA requires a "knowingly made" misrepresentation, rather than a negligent misrepresentation, we conclude that the Legislature intentionally chose the higher "knowingly" standard over the negligence standard. *See* § 57-12-2(D). Because Plaintiff has failed to point to evidence in the record to demonstrate that Defendant's misrepresentations satisfy this standard, and because he has not persuaded this court that knowingly is a lesser standard than negligently, we conclude that the district court did not err in finding that Defendant did not knowingly make misrepresentations to Plaintiff.

**8.      The District Court Did Not Err in Denying Plaintiff's Claim for "Unconscionable Trade Practice"**

{52}      Plaintiff's second issue is whether the district court erred in effectively denying his claim for unconscionable trade practice by finding that "Plaintiff failed to establish Defendant's acts and practices constituted an unconscionable trade practice." Plaintiff contends that this finding is more accurately categorized as a legal conclusion and thus warrants de novo review. "Findings of fact and conclusions of law are often indistinguishable, and a reviewing court is not bound by a designation as a finding." *Miller v. Bank of Am., N.A.*, 2015-NMSC-022, ¶ 27, 352 P.3d 1162 (alterations, internal quotation marks and citation omitted). Further, "[t]o the extent that [the p]laintiff contends that there are errors of law in the trial court's conclusions or in those findings that function as conclusions, we apply a de novo standard of

33

review." *Jones*, 2005-NMCA-124, ¶ 8. We agree with Plaintiff that what constitutes an unconscionable trade practice is a question of law, dependent on the factual circumstances present. We therefore apply de novo review.

The UPA defines an unconscionable trade practice as:

[A]n act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts that to a person's detriment:

　　　(1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or

　　　(2) results in a gross disparity between the value received by a person and the price paid.

Section 57-12-2(E). Here, Plaintiff contends that the value he received from the contract is grossly disproportionate to the price he paid. As grounds for this claim, Plaintiff bases his determination of value on the longevity of the well. Plaintiff was told by Defendant that Plaintiff could expect the well to last about fifty years, and instead it lasted less than four before it "substantially failed."

{53} The leading case on unconscionability is *State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, 329 P.3d 658. In that case, our Supreme Court declared certain payday loans to be unconscionable, the least expensive of which carried a 1,147.14 percent interest rate. *Id.* ¶ 36. The Court held that the loans were objectively

34

low-value products which were "grossly disproportionate to their price." *Id*. The primary consumers of the payday loans were those in poverty, the unbanked and underbanked members of society who are particularly vulnerable to the practices of payday loan companies. *See id.* ¶ 6. The district court had considered "value" in subjective terms, which our Supreme Court stated was the same as saying "the more desperate a person is for money, the more 'value' that person receives from a loan." *Id.* ¶ 35. The Court further stated that "[u]nder that erroneous reading of the statute, consumer exploitation would be legal in direct proportion to the extent of the consumer's desperation[.]" *Id.* The Court, considering value in objective terms, found that when the values received, for example, $100 or $200, were compared to the prices paid, $999.71 or $2,160.04 respectively, there was a gross disparity between the price paid and value received. *Id.* ¶¶ 7, 8, 38. The Court further stated:

> The UPA is a law that prohibits the economic exploitation of others. The language of the UPA evinces a legislative recognition that, under certain conditions, the market is truly not free, leaving it for courts to determine when the market is not free, and empowering courts to stop and preclude those who prey on the desperation of others from being rewarded with windfall profits.

*Id.* ¶ 34.

{54}     In a UPA claim for unconscionability, the burden is on the plaintiff to provide the court with evidence to demonstrate a gross disparity. *See Lenscrafters, Inc. v. Kehoe*, No. 28,145, 2010 WL 4924992, at *8 (Oct. 15, 2010) (non-precedential), *aff'd*

35

*in part, rev'd in part on other grounds*, 2012-NMSC-020, 282 P.3d 758. In this case, Plaintiff has not met that burden, as he has summarily offered an argument for unconscionability without having provided evidence that the value received was grossly disproportionate to the price paid, other than to state that because the well lasted for less than four years, he received less than 10 percent of the longevity he was promised. Plaintiff conflates longevity and value without offering the court evidence as to how longevity determines value in this case. Under Plaintiff's view of *B&B Investment Group*, any time a defendant breaches a contract, the plaintiff's subjective, perceived value of the contract would be lowered and thus be disproportionate to the price paid. Under this theory, practically every breach of contract claim would also be an unconscionability claim, which is not, we believe, what the Legislature intended in enacting the UPA.

{55}     Under *B&B Investment Group*, we do not look to a breach to determine whether there exists a disparity that is disproportionate. Rather, we look to the bargain of the parties and determine whether on its face the benefit of the bargain (value received) and the price paid are grossly disparate. We conclude that is not the case here. Plaintiff bargained for a well with an implied warranty of a workmanlike standard and an express warranty of fifty years of use for just under $38,000. Other than that it failed to perform as expected, Plaintiff points to nothing in the record to

demonstrate that what he bargained for was disproportionate to that price. Put another way, Plaintiff provides this court with no evidence that the well, as bargained for, was not worth $38,000, nor did he offer evidence to show that, even taking into account the fact the well lasted only a fraction of the time promised, the value received for the well as bargained for was grossly disproportionate to the price he paid.

{56}     Given Plaintiff's potential award for treble damages and attorney fees in an unconscionable trade practice claim, Section 57-12-10, we believe that the Legislature intended that those seeking relief for an unconscionability claim must establish that the defendant economically exploited the plaintiff. *See B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 34. We find no exploitation beyond the breach of warranty, upon which claim Plaintiff has already recovered against Defendant. Plaintiff's unconscionability claim is grounded solely on the basis that the well did not last as long as Defendant said it would and thus there must be a gross disparity between the price paid and value received. However, whether the Defendant breached the parties' agreement and whether the well lasted as long as Defendant assured Plaintiff it would were issues appropriately considered and disposed of by the district court under Plaintiff's other causes of action. Therefore, we hold that the district court did not err in denying Plaintiff's claim for unconscionable trade practice.

**CONCLUSION**

{57}    We reverse the district court's award of consequential damages in the amount of $2,500, and affirm the district court's judgment in all other respects.

{58}    **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Chief Judge**

_____
**M. MONICA ZAMORA, Judge**